JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Kimmy Knuckles appeals from his conviction in the Cuyahoga County Court of Common Pleas on one count of burglary with five repeat violent offender specifications and five notice of prior conviction specifications, and a second count of burglary with no specifications. For the reasons stated below, we affirm.
 {¶ 2} The following facts are from the trial transcript. On June 14, 2004, Jonathan Widman returned to his home on West 116th Street after a day of roofing a house that he was renovating. Upon arriving home, Widman went to the second floor bathroom to take a shower. During his testimony, Widman was asked whether the front door was left open. Widman began to respond "No, I did not leave the front —" when he was interrupted by defense counsel. Defense counsel then rephrased and asked whether the door was unlocked, and Widman responded that it was unlocked.
 {¶ 3} While in the shower, Widman noticed his cat "come flying up the steps scared," which was unusual. Widman then heard a noise and could hear somebody coming up the stairs. Widman stepped outside of the bathroom and saw a man standing on the landing with Widman's reciprocating saw under his arm.[1]
 {¶ 4} Widman testified that he was able to get a good look at the person on his landing. Widman stated the man was wearing bright red converse tennis shoes, was wearing the color bright teal, was wearing shorts and a shirt, and was missing a lot of teeth.
 {¶ 5} Upon seeing the man on his landing, Widman put on his underwear and chased him. Widman ran down the steps and out the front door, dressed only in his underwear. Widman caught up to the man, grabbed him by the shoulder and took back his saw, which the man had wrapped in a blue Wal-mart bag from Widman's house. Widman then gave the man a shove.
 {¶ 6} After this encounter, Widman put the saw back inside, put some clothes on, and headed right back outside. Widman observed the man run to a house down the street. Because there are fences behind all of the houses, Widman waited for the man to come back out to the street. When the man came out, he looked at Widman as if nothing was wrong and said "what's up." Widman responded, "I think you know what's up," and the man replied, "well, I don't have anything." Widman recognized the person as the same man he encountered in his house, who was wearing the same clothing identified above.
 {¶ 7} Widman also testified that the man said "you better get away from me, I'll cut you." Widman responded by screaming to a lady who was outside to call the police. Widman acknowledged on cross-examination that he did not inform the investigating officers that the man had threatened him with a knife.
 {¶ 8} The man started to run, and Widman chased him for several blocks to some railroad tracks. The man then began hurling loose bricks at Widman. Widman also stated that the man grabbed a pole, began running toward him, and started swinging the pole at him. During the course of the incident, Widman observed the man try to get into a "brownstone building." Widman saw the man open the door to the building and heard a lady scream "get out of here, you're not coming in here" and saw her trying to push the door back shut. This lady was Daline Lance. The man then unsuccessfully tried to get in through a basement door. By this time, Widman observed about twenty onlookers. When the police arrived, they arrested Knuckles and interviewed the people who were there.
 {¶ 9} At trial, Widman positively identified the defendant, Kimmy Knuckles, as the man that was in his house, that he chased down the street, and that the police arrested.
 {¶ 10} Daline Lance testified that on June 14, 2004, she was visiting her friend George Dennison at his home. She heard the side door to the house open. When Daline looked out, she saw a man, whom she identified as Knuckles, coming into the home. Daline indicated that the door was shut but unlocked at the time. Daline further testified that the man made it past the doorjamb and started to go up the stairs. When Daline saw him, she said "hey, wait a minute, out of here," and the man turned around and left. Daline called the police and went outside to look for a license plate number.
 {¶ 11} Daline noticed the man was on foot and in his hand he had a big bar, which looked like a street sign post, that he was swinging around. She also notice the man had a beer and a hammer in his other hand. Daline described the man as wearing red converse shoes, green shorts, and a purple shirt. She also testified that the man did not have permission to come into the house. George Dennison, the owner of the house, testified he was not home at the time and that Daline Lance and his daughter were the only people there with his permission.
 {¶ 12} Officer Robert Miles, one of the officers who responded to the scene, testified that when he arrived, the group of people on the street pointed at an individual who was standing in the middle of a yard drinking a bottle of beer. Officer Miles identified the man as Knuckles. Officer Miles also retrieved a pole that was lying near the suspect.
 {¶ 13} Detective Maurice Hamilton testified that he interviewed Knuckles after the incident. Detective Hamilton stated that Knuckles denied ever going into a house or taking anything. Detective Hamilton also testified that Knuckles claimed he was visiting friends named Barb and Ernie and that when he exited their home, people started to follow him, so he ran. However, Knuckles was unable to provide a last name, address or phone number for Barb and Ernie.
 {¶ 14} Officer Losteiner, who also responded to the scene, identified Knuckles as the person who was arrested with respect to the incident. On cross-examination, Officer Losteiner confirmed that Widman indicated he heard someone in his house. Officer Losteiner also indicated that Widman did not mention being threatened with a knife by Knuckles.
 {¶ 15} Appellant called Earnest Green to testify. Green stated that he and his wife resided on West 116th Street and that Kimmy Knuckles visited him on occasion. Green indicated that Knuckles called him on the night he was arrested and that Knuckles had visited him that day. However, Green testified that the date of the visit was June 6, the day of his wife's surgery, not June 14.
 {¶ 16} Knuckles was charged with two counts of burglary. A jury found Knuckles guilty on both counts. Thereafter, the trial court found Knuckles guilty of the notices of prior conviction. Knuckles was convicted of the charges and sentenced to five years of incarceration. Knuckles has appealed, raising three assignments of error for our review.
 {¶ 17} Knuckles' first assignment of error provides:
 {¶ 18} "The evidence was insufficient to show the use of `force, stealth, or deception' for the charge of burglary in count one of the indictment and therefore the conviction should be reversed because appellant was denied due process under the Fourteenth Amendment of the United States Constitution."
 {¶ 19} When an appellate court reviews a record upon a sufficiency challenge, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Leonard, 104 Ohio St.3d 54, 67, 2004-Ohio-6235, quoting State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 20} In this case, Knuckles challenges his conviction for burglary on count one, which relates to the incident involving Widman's home. The applicable statute, R.C. 2911.12(A)(1), provides: "No person, by force,stealth, or deception, shall do any of the following: (1) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense." Emphasis added.[2]
 {¶ 21} Knuckles argues that there was no physical evidence of a forced entry, and the only evidence introduced on the element of "force, stealth, or deception" was elicited during the cross-examination of Widman and was insufficient as a matter of law. The state makes no claim that deception was used to enter the home. Rather, the state claims the evidence established force and/or stealth.
 {¶ 22} With respect to force, Knuckles claims there was no evidence that the front door was closed. Knuckles also argues that Widman did not provide a complete answer when he was asked whether the front door was open.
 {¶ 23} The transcript reflects that when defense counsel indicated his understanding that the front door was left open, Widman responded "No, I did not leave the front —" when interrupted by defense counsel. Defense counsel then rephrased and asked whether the door was unlocked, and Widman responded that it was. Although Widman did not get the opportunity to finish his response, he clearly responded negatively with a "no" before elaborating on his answer. Widman also testified that nobody he knows would enter his home without ringing the door bell. We find that Widman's testimony was sufficient to establish that the front door was not left open, but was unlocked when Knuckles entered.
 {¶ 24} This court has held that opening a closed door, even one that is unlocked, is sufficient to establish force. State v. Johnson (Mar. 26, 1987), Cuyahoga App. No. 51597; State v. Wohlfeil (Apr. 2, 1987), Cuyahoga App. No. 51983. Accordingly, we find that there was sufficient evidence upon which any rational trier of fact could have found the element of force proven beyond a reasonable doubt. Having found sufficient evidence of force, we need not address the issue of stealth.
 {¶ 25} Knuckles' first assignment of error is overruled.
 {¶ 26} Knuckles' second assignment of error provides:
 {¶ 27} "Appellant's convictions are against the manifest weight of the evidence."
 {¶ 28} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Leonard, 104 Ohio St.3d at 68 (internal quotes and citations omitted).
 {¶ 29} Under this assignment of error, Knuckles essentially challenges the credibility of Widman. Although this court considers the credibility of witnesses in reviewing the record, we accord due deference to the trier of fact because the jury had the opportunity to view the witnesses' testimony and adjudge their credibility.
 {¶ 30} Knuckles argues that Widman's testimony was inconsistent with statements made to law enforcement officials. Knuckles claims that Widman's testimony was inconsistent as to whether he initially noticed Knuckles standing on the landing on the second floor of Widman's home, or whether he first saw Knuckles as Knuckles was leaving the front door of the house. Our review of the record reflects that Widman clarified any inconsistency in his testimony on cross-examination. Widman explained that he first saw Knuckles on his upstairs landing, and then he again saw Knuckles exiting the front door when Widman, after dressing in his underwear, chased him outside. Widman also stated he never lost sight of Knuckles as he was chasing him out the front door and unequivocally stated, "make no mistake, there is no discrepancy upon who that person is."
 {¶ 31} Knuckles also claims that Widman's description of the perpetrator changed at trial to include a visual description of the intruder's face. However, our review of the evidence reflects that Widman provided a very detailed description of Knuckles that was consistent with descriptions provided by other witnesses. Widman also positively identified Knuckles in court. Merely because Widman added a description of the intruder's face at trial does not amount to a discrepancy.
 {¶ 32} Finally, Knuckles argues that Widman testified during trial that Knuckles threatened him with a knife, a fact that was never mentioned to investigating officers. Widman did maintain at trial that Knuckles had threatened to cut him with a knife. Widman did not waver in his testimony. Although this detail was not provided to police at the time of the event, Widman's testimony concerning the events was very detailed. The jury was in the best position to assess Widman's credibility, and it is evident that they believed Widman's and Daline Lance's detailed accounts of the burglaries.
 {¶ 33} Further, upon this court's examination of the entire record, weighing the evidence and all reasonable inferences, and consideration of the credibility of the witnesses, we do not find that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Accordingly, we find that Knuckles' conviction was not against the manifest weight of the evidence and overrule the second assignment of error.
 {¶ 34} Knuckles' third assignment of error provides:
 {¶ 35} "Appellant was denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution and Article 10 of the Ohio Constitution."
 {¶ 36} In evaluating whether a defendant has been denied his Sixth
Amendment right to effective assistance of counsel, the ultimate query is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." State v. Hester (1976),45 Ohio St.2d 71, paragraph four of the syllabus. Moreover, in order to prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that his counsel performed deficiently and that he suffered prejudice from the deficiency. State v. Turner, 105 Ohio St.3d 331, 338,2005-Ohio-1938. "Deficient performance consists of falling below an objective standard of reasonable representation; to prove prejudice, a defendant must demonstrate that, but for counsel's errors, the result of the proceeding would have been different." Id., citing Strickland v.Washington (1984), 466 U.S. 668, 687; State v. Bradley (1989),42 Ohio St.3d 136, paragraph two of the syllabus.
 {¶ 37} Knuckles argues that his trial counsel elicited testimony on cross-examination concerning the element of force, which was a necessary element of the offense. Knuckles asserts that because this was the only evidence regarding the status of the front door, defense counsel did not act in the best interests of Knuckles. Also, Knuckles claims that but for counsel's actions the result of the trial would have been different.
 {¶ 38} Judicial scrutiny of defense counsel's performance must be highly deferential. Strickland, 466 U.S. at 689. In Ohio, there is a presumption that a properly licensed attorney is competent and the defendant has the burden of proof to establish counsel's performance was deficient. State v. Calhoun, 86 Ohio St.3d 279, 1999-Ohio-102. Further, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. Strickland,466 U.S. at 690.
 {¶ 39} The Supreme Court of Ohio has stated that "even `debatable trial tactics' do not constitute a deprivation of the effective assistance of counsel." State v. Clayton (1980), 62 Ohio St.2d 45, 49, certiorari denied, 449 U.S. 879. As the state argues, the question of whether Widman had "left the front door open" may be viewed as a strategy by defense counsel to obtain an affirmative response. Also, Widman was the first witness called and the state could have introduced evidence of the closed and unlocked door later in trial, had it not been introduced by defense counsel.
 {¶ 40} We recognize that the testimony elicited by defense counsel was incriminating to Knuckles. However, as the United States Supreme Court explained in Strickland v. Washington, 466 U.S. at 686, "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." In light of the overwhelming evidence of Knuckles' guilt, we cannot say that the testimony elicited by his attorney produced anything other than a just result.
 {¶ 41} Upon our review, we find that, under all the circumstances, Knuckles had a fair trial and substantial justice was done. Knuckles' third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, P.J., and Sweeney, J., concur.
[1] Widman explained that his reciprocating saw is a heavy duty saw that costs about $300 and is used for projects such as cutting out walls, making windows bigger, or cutting in new doorways.
[2] We note that under this assignment of error Knuckles does not raise a sufficiency challenge to his conviction under count two. Count two pertained to Knuckles' entry into the home in which Daline Lance was present. This count was brought under R.C. 2911.12(A)(4), which provides that "No person, by force, stealth, or deception, shall do any of the following: (4) Trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present, or likely to be present."