[Cite as *State v. Christian*, 2014-Ohio-2590.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

STATE OF OHIO,                          )
                                        )
    PLAINTIFF-APPELLEE,                 )
                                        )       CASE NO. 12 MA 164
V.                                      )
                                        )       OPINION
DUNIEK CHRISTIAN,                       )
                                        )
    DEFENDANT-APPELLANT.                )

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Criminal Appeal from Court of Common Pleas of Mahoning County, Ohio Case No. 10CR1361 |
| JUDGMENT: | Affirmed |
| APPEARANCES: | |
| For Plaintiff-Appellee | Paul Gains Prosecutor Ralph M. Rivera Assistant Prosecutor 21 W. Boardman St. 6th Floor Youngstown, Ohio 44503 |
| For Defendant-Appellant | Attorney Douglas A. King 91 West Taggart Street, P.O. Box 85 East Palestine, Ohio 44413 |

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: June 13, 2014

DONOFRIO, J.

{¶1} Defendant-appellant, Duniek Christian, appeals from a Mahoning County Common Pleas Court judgment convicting him of failure to comply with an order or signal of a police officer.

{¶2} On November 10, 2010, a team comprised of Youngstown Police Officers, SWAT Team members, and the FBI Violent Crimes Task Force set out to apprehend appellant on an outstanding felony warrant. The officers set up a perimeter around a house on Northwood Avenue on Youngstown's east side where they believed appellant would be. When the officers arrived, appellant was seated in the driver seat of a Chrysler Sebring that was parked in the driveway. Two other men were in the car with appellant, one in the front passenger seat and one in the back seat. The SWAT Team van pulled up behind the Sebring in the driveway. Officers got out of the van and ordered appellant to exit the car. Instead of exiting the car, appellant drove forward, through a fence and through the yard. He continued driving away through the neighborhood and onto Jacobs Road. Appellant drove to a dead-end street where he and his passengers fled from the car on foot. Appellant was soon apprehended hiding under a pile of brush.

{¶3} On January 6, 2011, a Mahoning County Grand Jury indicted appellant on one count of failure to comply with an order or signal of a police officer in violation of R.C. 2921.331(B)(C)(5)(a)(ii). Because the indictment alleged that appellant's actions in failing to comply caused a substantial risk of serious physical harm to persons or property, the offense was a third-degree felony.

{¶4} The matter proceeded to a jury trial where the jury found appellant guilty as charged. The trial court subsequently sentenced appellant to three years in prison. It also imposed a $10,000 fine, which it suspended, and suspended appellant's driving privileges for eight years.

{¶5} Appellant filed a timely notice of appeal on September 7, 2012.

{¶6} Appellant raises six assignments of error. His first assignment of error states:

DEFENDANT/APPELLANT'S CONVICTION MUST BE

VACATED AND THE CHARGES DISMISSED AS THE DEFENDANT/APPELLANT'S STATUTORY AND CONSTITUTIONAL RIGHTS TO A SPEEDY TRIAL WERE VIOLATED.

**{¶7}** Appellant contends he was not brought to trial within his speedy trial time. But he does not set out how his speedy trial time should have been calculated and does not set out how many days he asserts passed on his speedy trial clock before he was tried. He also contends he objected in the trial court to his lack of speedy trial. Specifically, he points to a December 13, 2011 judgment entry where his objection was noted by the court.

**{¶8}** Pursuant to R.C. 2945.71(C)(2), the state must bring a person charged with a felony to trial within 270 days after his arrest. If the accused is held in jail in lieu of bail on the pending charge, then each day he is held in jail counts as three days. R.C. 2945.71(E). This is known as the "triple-count" provision.

**{¶9}** Appellant was in jail the entire time waiting for trial because, in its judgment entry of sentence, the trial court gave appellant credit towards his sentence of 653 days. However, because appellant's charge in this case stemmed from an outstanding felony warrant, it cannot be said that he was being held solely on the charge pending in this case. The triple-count provision only applies to those defendants held in jail in lieu of bail solely on those pending charges. *State v. Dunkins*, 10 Ohio App.3d 72, 74-75, 460 N.E.2d 688 (9th Dist.1983). The record, however, is not clear on this point. But even if the state had to bring appellant to trial within 90 speedy trial days, the state met its burden.

**{¶10}** The time for speedy trial begins to run when an accused is arrested. *State v. Canty*, 7th Dist. No. 08-MA-156, 2009-Ohio-6161, ¶80. But the actual day of the arrest is not counted. *Id.* Appellant was arrested on November 10, 2010. Thus, his speedy trial time began to run on November 11, 2010.

**{¶11}** On January 28, 2011, the case was called for trial but was continued because defense counsel moved to withdraw due to a conflict. The period of any reasonable continuance granted other than upon the accused's own motion tolls the

speedy trial clock. R.C. 2945.72(H). Reasonableness depends on the facts and circumstances of each particular case. *State v. Saffell*, 35 Ohio St.3d 90, 91, 518 N.E.2d 934 (1988). The need for new counsel due to a conflict with the current defense counsel is a reasonable basis to continue a trial. The court appointed new counsel. Because defense counsel withdrew due to a conflict and appellant needed a reasonable continuance in order for new counsel to become familiar with the case, the time from the January 28, 2011 request to withdraw and the April 1, 2011 pretrial was tolled. At this time, 78 days had elapsed on appellant's speedy trial clock.

{¶12} On April 1, 2011, the court held a pretrial. Appellant requested that the court remove his counsel and appoint new counsel. The court granted appellant's request. This delay was attributable to appellant. R.C. 2945.72(H) provides that the speedy trial period may be tolled for the period of any continuance granted on the accused's own motion. *State v. Brown*, 7th Dist. No. 03-MA-32, 2005-Ohio-2939, ¶41. Thus, the time from the April 1, 2011 motion for new counsel and the next pretrial date of May 13, 2011, was tolled because the delay was attributable to appellant.

{¶13} On May 13, 2011, the court held the next pretrial. Defense counsel stated it needed more time to prepare. By agreement of the parties, the case was reset for a pretrial on June 16, 2011. Joint motions for continuance toll a defendant's speedy trial time because they can be attributed to both parties. *Brown*, 7th Dist. No. 03-MA32, at ¶44. Thus, appellant's speedy trial clock remained at 78 days.

{¶14} On June 16, 2011, at the pretrial the parties agreed to an August 3, 2011 pretrial and a September 27, 2011 trial. Appellant's speedy trial clock continued to toll.

{¶15} On September 22, 2011, appellant filed a motion to continue the trial. The trial court granted appellant's motion and stated that the parties agreed to a December 14, 2011 trial date. Thus, appellant's speedy trial clock continued to toll.

{¶16} The trial court held a status conference on December 6, 2011. The court found that appellant and his counsel were unable to communicate and work

together. Therefore, the court permitted counsel to withdraw and appointed new counsel the next day. The court continued the trial to give the new counsel time to prepare. "It is well-established that defense counsel may request a continuance in order to obtain more time to prepare for the case without the defendant's agreement, and the defendant is bound thereby." *State v. Smith*, 2d Dist. No.2003 CA 93, 2004-Ohio-6062, ¶19, citing *State v. McBreen*, 54 Ohio St.2d 315, 376, N.E.2d 593 (1978), syllabus. Therefore, appellant's speedy trial clock continued to toll at 78 days.

**{¶17}** The court next set the trial for April 16, 2012. On that day, appellant filed a motion to continue. The court granted appellant's motion and set the trial for May 21, 2012. Once again, this continuance was charged to appellant.

**{¶18}** On May 17, 2012, the state filed a motion to continue because one of its key witnesses would be unavailable from May 21 to May 25. The court granted the continuance. The unavailability of a state's witness is a reasonable basis for a continuance. *State v. Sedlak*, 11th Dist. No. 2010-P-0036, 2011-Ohio-870, ¶14. Thus, the speedy trial time kept tolling.

**{¶19}** Trial was then set for July 23, 2012. On that day, the court sua sponte continued the trial because it was engaged in another criminal jury trial. The clock was tolled during this period because a continuance issued by the trial court due to involvement in another criminal trial tolls the running of the speedy trial time. *State v. McCall*, 152 Ohio App.3d 377, 2003-Ohio-1603, 787 N.E.2d 1241, ¶23 (7th Dist.). The court set the trial for July 30, 2012.

**{¶20}** On July 30, 2012, the court called the case for trial but continued it due to appellant's lack of civilian clothing.

**{¶21}** The case was finally tried on July 31, 2012.

**{¶22}** As can be seen from this long timeline of events, almost every continuance was either requested by or agreed to by appellant. Only 78 days ran on appellant's speedy trial clock. Thus, there is no speedy trial error.

**{¶23}** Accordingly, appellant's first assignment of error is without merit.

**{¶24}** Appellant's second assignment of error states:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED THE STATE'S CHALLENGE FOR CAUSE AS TO PROSPECTIVE JUROR ODEM.

**{¶25}** Here appellant asserts the trial court erred in dismissing Juror Odem for cause. Appellant argues that Juror Odem stated he could be fair and impartial, agreed to keep an open mind, harbored no hard feelings against Youngstown Police who had previously arrested him, and did not recall being a defendant in the same court where the trial was currently taking place. Appellant contends Juror Odem demonstrated that he could be fair and impartial, so the trial court should not have dismissed him for cause. Additionally, he claims the grounds for the state's challenge do not appear on the record.

**{¶26}** We will not disturb a trial's court's ruling on a challenge for cause "unless it is manifestly arbitrary and unsupported by substantial testimony, so as to constitute an abuse of discretion." *State v. Jones*, 7th Dist. Nos. 08 JE 20, 08 JE 29, 2010-Ohio-2704, ¶68, quoting *State v. Williams*, 79 Ohio St.3d 1, 8, 679 N.E.2d 646 (1997).

**{¶27}** A prospective juror may be challenged for cause if he or she demonstrates bias toward the defendant or the state. R.C. 2945.25(B); Crim.R. 24(C)(9). A prospective juror may also be challenged for cause if the juror is unsuitable for any other cause to serve as a juror. R.C. 2945.25(O); Crim.R. 24(C)(14).

**{¶28}** Juror Odem stated that he has a brother currently in CCA on drug-related charges. (Tr. 120-121). He also stated that he personally served two months in jail on a child endangering charge out of Youngstown Municipal Court. (Tr. 122-123). Juror Odem stated that the Youngstown Police did their job in that case and stated, "They wanted to charge me with it, so I guess I was guilty." (Tr. 124). When asked by the prosecutor if he remembered being in Judge Evans' courtroom (where the trial was being held), Juror Odem stated, "I've never been to this court." (Tr. 123). He further stated that he did not recall being in front of Judge Evans. (Tr. 123).

**{¶29}** Additionally, when asked by the prosecutor if he understood that the concept of proof beyond a reasonable doubt was not proof beyond all doubt, Juror Odem replied, "I can't say that's true." (Tr. 125). He went on to state that he could listen to evidence and judge the witnesses' credibility. (Tr. 127). Juror Odem stated that he could be a fair and impartial juror. (Tr. 130).

**{¶30}** The state asked that the court dismiss Juror Odem for cause. (Tr. 133). Before ruling on the state's challenge for cause, the court and counsel questioned Juror Odem further out of the presence of the other potential jurors.

**{¶31}** Judge Evans informed appellant that he was, in fact, before the judge on a felony charge that was amended to a misdemeanor in 2003. (Tr. 134). When Judge Evans informed him of such, Juror Odem stated he was still unable to recall being in front of the judge. (Tr. 134-136). Judge Evans then stated, "Well, I believe you that you don't remember, but my problem is that you were here." (Tr. 136). Juror Odem stated that he could still be a fair and impartial juror. (Tr. 138).

**{¶32}** After the questions by the court and counsel and Juror Odem's inability to remember his criminal case before Judge Evans, the court excused Juror Odem for cause. (Tr. 138). In so doing, the court stated, "I appreciate your being candid with us, but we have a situation here where we just can't - - I don't understand the recollection, but I do understand you. * * * I don't think you're doing anything intentional, but I can't disprove it either." (Tr. 139). Appellant's counsel noted his objection. (Tr. 139).

**{¶33}** The trial court did not abuse its discretion in excusing Juror Odem for cause. Juror Odem had been a criminal defendant in the same court, before the same judge as appellant in this case. And oddly he had no recollection at all of this. That left the trial court with two possibilities: either Juror Odem lied about not remembering being before Judge Evans or his memory was so poor that he could not recall a felony charge he faced in common pleas court. Clearly, the trial court was not comfortable with either possibility. The court was in the best position to view the demeanor, gestures, and voice inflection of Juror Odem and to judge his level of bias

and his certainty and credibility as to his expression of bias. *Jones*, 7th Dist. Nos. 08 JE 20, 08 JE 29, at ¶70. We will not second-guess the trial court on this matter.

**{¶34}** Furthermore, when the court excused Juror Odem for cause, the state had not yet used any of its peremptory challenges. In fact, during the entire voir dire, the state only exercised one of its four peremptory challenges. (Tr. 157). Thus, had the court not excused Juror Odem for cause, the state would have likely used one of its peremptory challenges to excuse him.

**{¶35}** Accordingly, appellant's second assignment of error is without merit.

**{¶36}** Appellant's third assignment of error states:

DEFENDANT/APPELLANT'S CONVICTION MUST BE REVERSED DO [sic.] TO PROSECUTORIAL MISCONDUCT.

**{¶37}** In this assignment of error, appellant argues some of the prosecutor's questions to Officer Mark Gillette and several comments during closing arguments were unduly prejudicial to him.

**{¶38}** The test for prosecutorial misconduct is whether the conduct complained of deprived the defendant of a fair trial. *State v. Fears*, 86 Ohio St.3d 329, 332, 715 N.E.2d 136 (1999). In reviewing a prosecutor's alleged misconduct, a court should look at whether the prosecutor's remarks were improper and whether the prosecutor's remarks affected the appellant's substantial rights. *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). "[T]he touchstone of analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, ¶61, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940 (1982). An appellate court should not deem a trial unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments. *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶121.

**{¶39}** Appellant first takes issue with certain questions posed to Officer Gillette on re-direct examination as follows:

Q    Do you know whether or not this was a secret indictment?

A    I don't believe this was a secret indictment.  I do not know for sure, but I don't believe it was a secret indictment.

* * *

Q    Do you suit up like this and bring a SWAT Team on every warrant you serve?

A    No.

Q    And why did you do that in this case?

MR. MADISON:  Objection.

THE COURT:  Overruled.

A    Mr. Christian was involved in a situation years - -

MR. MADISON:  Objection.

THE COURT:  Sustained.

Q    You had to suit up in this situation because it was Mr. Christian's warrant?

A    Yes.

Q    You don't do that in every warrant?

A    No.

Q    You don't bring the SWAT Team at every warrant; do you?

A    No.

(Tr. 348-349).

{¶40} On cross examination, defense counsel asked Officer Gillette numerous questions regarding the Task Force.  He solicited testimony from Officer Gillette that if a person has a warrant out for his arrest that stemmed from a secret indictment, that person would not know he was wanted by the law and the Task Force would be assigned to apprehend him.  (Tr. 335).  Defense counsel also solicited testimony that the Task Force executes warrants, in part, so that local police departments are able to do other work.  (Tr. 337).

{¶41} The prosecutor's above questions were reasonable rebuttal questions

in light of defense counsel's cross examination. The testimony solicited by the defense implied that appellant may have been secretly indicted and may not have known there was a warrant for his arrest. It also implied that the procedures used to arrest appellant in this case were common to all of those with outstanding warrants. Thus, there was no misconduct in the prosecutor's line of questioning.

**{¶42}** Appellant next takes issue with several comments by the prosecutor during closing arguments. First, he argues the prosecutor should not have commented:

> This was a warrant that was served - - trying to be served on Duniek Christian. And I asked Officer Gillette, do you always bring the SWAT Team? No. Do you always have all of this gear and everybody? No. Because this is a warrant for Duniek Christian, that's how they have to respond to this warrant. All right? That's how they have to be ready.

(Tr. 373).

**{¶43}** These comments were not improper or prejudicial. They simply refer to the same evidence discussed above. And that evidence was in direct response to testimony solicited by the defense.

**{¶44}** Second, appellant argues the prosecutor should not have commented on his record during its rebuttal as follows: "Officer Marciano testified. He said he is familiar with Duniek, they have warrants for his arrest. If Mr. Madison wanted to know why he's familiar with him, he could have asked that. He didn't, because he doesn't want you to know." (Tr. 390).

**{¶45}** In his closing argument, in discussing Officer Michael Marciano's identification of appellant, defense counsel told the jury: "And he said he saw Duniek Christian's face. You didn't hear how or why or how he knows his face." (Tr. 380). The state objected to this comment, but the trial court overruled the objection.

**{¶46}** When the prosecutor made the above quoted comment, it was likely in direct response to defense counsel's comment that suggested Officer Marciano's

identification of appellant may not have been accurate because Officer Marciano's testimony did not tell the jury how he was familiar with appellant. The state even objected to this statement by defense counsel, but the court overruled the objection. The prosecutor's only recourse was to respond to the comment in rebuttal.

**{¶47}** In sum, the above quoted questions and comments did not amount to prosecutorial misconduct. Accordingly, appellant's third assignment of error is without merit.

**{¶48}** Appellant's fourth assignment of error states:

> THE TRIAL COURT ERRED BY FAILING TO GRANT THE DEFENDANT/APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO OHIO CRIMINAL RULE 29 MADE AT THE CLOSE OF THE STATE'S CASE-IN-CHIEF.

**{¶49}** Appellant asserts here the trial court should have granted his Crim.R. 29 motion for acquittal. He claims the state failed to present evidence that he created a *substantial* risk of *serious* physical harm to persons or property as was statutorily required. He points out that the chase occurred in an abandoned neighborhood where no people were out at the time. Appellant alleges the state's only evidence of damage was a single fence panel lying on the ground and there was no evidence that the fence did not belong to appellant.

**{¶50}** Appellant asserts the court should have granted his Crim.R. 29 motion for acquittal based on insufficient evidence. Thus, his claim here is one of sufficiency of the evidence.

**{¶51}** Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In essence, sufficiency is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the

record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith*, 80 Ohio St.3d at 113.

**{¶52}** The jury convicted appellant of violating R.C. 2921.331(B)(C)(5)(a)(ii), which states:

> (B) No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop.
>
> (C)(1) Whoever violates this section is guilty of failure to comply with an order or signal of a police officer.
>
> (5)(a) A violation of division (B) of this section is a felony of the third degree if the jury or judge as trier of fact finds any of the following by proof beyond a reasonable doubt:
>
> * * *
>
> (ii) The operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property.

**{¶53}** Appellant does not take issue with the finding that he operated a motor vehicle so as to willfully flee from a police officer. He only takes issue with the additional finding in section (C)(5)(a)(ii) that the operation of the vehicle caused a substantial risk of serious physical harm to persons or property. This additional finding elevates fleeing and eluding from a first-degree misdemeanor to a third-degree felony.

**{¶54}** A "substantial risk" is "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8). "Serious physical harm to property" is "any physical harm to property" that either "results in substantial loss to the value of the property or requires a substantial amount of time, effort, or money to repair or replace" or

"[t]emporarily prevents the use or enjoyment of the property." R.C. 29091.01(A)(6). "Serious physical harm to persons" includes such things as physical harm that carries a substantial risk of death, that involves permanent incapacity or substantial temporary incapacity, that involves permanent disfigurement or temporary serious disfigurement, or involves acute pain resulting in substantial suffering. R.C. 2901.01(A)(5).

{¶55} We must examine the relevant evidence in order to determine if the state met its burden.

{¶56} Officer Marciano testified first. He stated that on the day in question he was part of the team assigned to arrest appellant on outstanding felony warrants. (Tr. 207-208). The team was informed appellant was at an address on Northwood Avenue. (Tr. 208). Officer Marciano stated that numerous police cruisers, unmarked police vehicles, and the SWAT Team van went to the address. (Tr. 209-210). He was riding in the van. (Tr. 210). The van pulled into the driveway on Northwood almost to the bumper of a car parked in the driveway. (Tr. 210). Officer Marciano looked into the rear window of the car and saw appellant and two other men sitting in the car. (Tr. 210-211). Appellant was in the driver's seat. (Tr. 211). Officers exited the van and ordered the occupants to put their hands up and exit the car. (Tr. 211-212). Instead, appellant started the car and drove "directly through" a large six- to seven-foot stockade fence and through the backyard. (Tr. 212). In doing so, appellant knocked the fence down. (Tr. 222).

{¶57} The next time Officer Marciano saw the car, it was at a dead-end street by a wooded area. (Tr. 218). Officer Marciano then located appellant 250 to 300 yards from the car hiding under a pile of brush. (Tr. 219).

{¶58} Officer Marciano described the neighborhood where the incident took place as residential, but without a lot of people. (Tr. 221). He stated there were "quite a few" abandoned homes. (Tr. 221). He did not see any people out at the time. (Tr. 221).

{¶59} Officer Brian Voitus was the next witness. On the day in question,

Officer Voitus, along with Officer Richard Geraci, were in an unmarked police vehicle. (Tr. 254). They were stationed one street north of Northwood. (Tr. 255). The two officers were listening to the police radio when the SWAT Team ordered appellant and the other occupants out of the car on Northwood. (Tr. 256). He then saw the car come through the yards onto the street "in a hurry." (Tr. 256). Because the car he was in did not have lights or sirens, Officer Voitus was only able to follow the car appellant was driving until a marked police car arrived to pursue it. (Tr. 257). The car appellant was driving was in Officer Voitus's sight the entire time. (Tr. 257). He stated that it drove to Jacobs Road where it was passing cars "in and out." (Tr. 257-258). Officer Voitus stated the car then drove to Myron, a dead-end street, where it stopped and the occupants got out and started running. (Tr. 258). Officers Voitus and Geraci then apprehended one of the men who had bailed from the car. (Tr. 260). When asked how fast the car was driving down Jacobs Road, Officer Voitus stated that it was going "fast." (Tr. 260).

{¶60} Officer Geraci testified next. He corroborated Officer Voitus's testimony. He also testified that the car appellant was driving went through a stop sign at the corner of Karl and Jacobs Road and when it turned onto Myron "they were flying." (Tr. 282-283). In describing the car as it was driving on Jacobs Road, Officer Geraci stated that it was swerving around cars trying to pass them and travelling "at a high rate of speed." (Tr. 283-284). Officer Geraci also testified that he observed the fence that appellant drove through and he described the loss in value to the fence as "substantial." (Tr. 293). However, he was unsure as to what the value of the fence might be. (Tr. 293-294).

{¶61} Officer Russell Davis also testified regarding numerous photographs he took of the scene. The state offered several photographs of a section of the fence lying flat on the ground. (Exs. 5, 7, 8, 10).

{¶62} There is no question that appellant willfully fled from the police after being ordered to exit the car he was sitting in. Officer Marciano identified appellant and testified that numerous police officers ordered appellant and the other occupants

of the car to exit the car with their hands up. Officer Marciano further testified that instead of complying with the officers' orders, appellant drove the car through a fence and through backyards in an attempt to flee from the police.

**{¶63}** Moreover, in construing the evidence in the light most favorable to the state as we are required to do in a sufficiency of the evidence challenge, the evidence also demonstrated that in fleeing from the police, appellant caused a substantial risk of serious physical harm to persons or property. First, Officer Marciano testified that appellant drove right through a fence. And the photographs depicted a section of a fence lying flat on the ground with the next section pushed away at an angle. "Serious physical harm to property" includes physical harm that temporarily prevents the use of the property. The fence could not be used, at least temporarily, after it had been run over and laid flat on the ground. Second, while appellant was fleeing the police, Officer Geraci stated that appellant drove through a stop sign without stopping, was swerving in and out of traffic at a high rate of speed, and was "flying" down the road. It is reasonable to infer that this type of erratic driving would cause a substantial risk of serious physical harm to other motorists travelling on Jacobs Road and a substantial risk of serious physical harm to their vehicles. Fleeing at a high rate of speed through mixed residential/commercial areas is sufficient evidence to prove a substantial risk of serious physical harm to persons or property. *State v. Garrard*, 170 Ohio App.3d 487, 2007-Ohio-1244, 867 N.E.2d 887, ¶37 (10th Dist.); *State v. Walby*, 6th Dist. No. S-91-1, 1992 WL 42939 (March 6, 1992).

**{¶64}** Thus, there was sufficient evidence to support appellant's conviction and, therefore, the trial court did not err in overruling his Crim.R. 29 motion for acquittal. Accordingly, appellant's fourth assignment of error is without merit.

**{¶65}** Appellant's fifth assignment of error states:

DEFENDANT/APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶66} In this assignment of error, appellant argues his conviction was against the manifest weight of the evidence. He makes the identical argument here as he did in his fourth assignment of error.

{¶67} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" *Id.* (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. *Id.* at 390.

{¶68} Yet granting a new trial is only appropriate in extraordinary cases where the evidence weighs heavily against the conviction. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). This is because determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts who sits in the best position to judge the weight of the evidence and the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *State v. Rouse*, 7th Dist. No. 04-BE-53, 2005-Ohio-6328, ¶49, citing *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Thus, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. No. 99-CA-149, 2002-Ohio-1152.

{¶69} As discussed in appellant's fourth assignment of error, the state put forth evidence going to all of the elements of felony fleeing and eluding. There was no evidence to contradict that appellant was the driver of the car that fled from police or that police apprehended appellant after he bailed from the car. Moreover, the

evidence was uncontroverted that police ordered appellant from his vehicle and instead of complying appellant drove through a fence and through the yards, drove through a stop sign, travelled at an excessive rate of speed, and swerved through traffic in an effort to elude the police. Given this evidence, we cannot conclude that the jury clearly lost its way and created a manifest injustice in finding appellant guilty.

**{¶70}** Accordingly, appellant's fifth assignment of error is without merit.

**{¶71}** Appellant's sixth assignment of error states:

DEFENDANT/APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL PURSUANT TO THE DOCTRINE OF CUMULATIVE ERROR.

**{¶72}** Appellant argues that due to the cumulative effect of the errors he alleged in his first five assignments of error, he was denied a fair trial.

**{¶73}** An appellate court may reverse a defendant's conviction based on the doctrine of cumulative error. Cumulative error occurs when errors deemed separately harmless deny the defendant a fair trial. *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus.

**{¶74}** As discussed in this opinion, none of appellant's assignments of error have merit or have raised a harmless error. There is no evidence that appellant was denied a fair trial. Thus, there was no cumulative error.

**{¶75}** Accordingly, appellant's sixth assignment of error is without merit.

**{¶76}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Vukovich, J., concurs.
DeGenaro, P.J., concurs.