[Cite as *State v. Fluker*, 2026-Ohio-1278.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                    :

      Plaintiff- Appellee,                   :

                                           No. 115355

      v.                                         :

CECIL FLUKER,                                      :

      Defendant-Appellant.                   :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 9, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-24-692251-A, CR-24-692440-A, and CR-24-696027-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Mary Ann Zaky, Assistant Prosecuting Attorney, *for appellee.*

Eric M. Levy, *for appellant.*

MICHELLE J. SHEEHAN, A.J.:

{¶ 1} Defendant-appellant Cecil Fluker ("Fluker") appeals from the judgment of his convictions for burglary, menacing by stalking, and intimidation. On appeal, Fluker challenges 1) the sufficiency of the evidence supporting his

convictions; 2) the jury's findings of guilt, alleging that his convictions are against the manifest weight of the evidence; 3) the trial court joining three separate indictments for trial; 4) the instructions given to the jury; 5) certain evidence admitted at trial; and 6) the effectiveness of his trial counsel.

{¶ 2} After a thorough review of the record and applicable law, we overrule each assignment of error. The convictions are affirmed.

## I. Background Overview

### A. Relevant facts

{¶ 3} M.W. first met Fluker when she was 17 years old. They share one child together, D.F. At the time of trial, M.W. was 22 years old and had been employed at an Amazon facility for approximately four years. Shortly after meeting Fluker, she moved in with him and his girlfriend, Belinda Massey ("Massey"). M.W. described her relationship with Fluker as "mostly sex" and that it was "traumatizing" and "controlling." She stated that the two would often fight. While living with Fluker, M.W. stated that she ran away three times, returning twice. The third time she ran away, she found her own place to live.

{¶ 4} After M.W. moved out, she kept in contact with Fluker and Massey. M.W. explained that when she was scheduled to work, M.W.'s mother would often watch D.F. Otherwise, M.W. would pay Fluker to watch their child. M.W. stated that Fluker watched D.F. about one week out of the month. She also testified that Fluker would often give her rides to work, with Massey accompanying him at times.

**B. May 4, 2024 Incident**

{¶ 5} On May 4, 2024, Fluker and Massey picked up M.W. in the morning and drove her to work. M.W. described the drive to work that day as "a little haywire." She stated that Fluker and Massey were trying to convince her to move back in with them and that they tried "to bring that old lifestyle on me[.]" Fluker disputes this, testifying that the nature of the conversation concerned a man that Fluker claimed had been threatening him. When they arrived at the Amazon facility, M.W. exited the vehicle and went into work.

{¶ 6} As soon as M.W. exited the vehicle, Fluker became upset with her, continuing to call and text her. By the time her shift ended, M.W. explained that the situation had become "hostile." She stated that when Fluker came to pick her up, he accused her of cheating on him, claiming that he saw her exit a side door of the Amazon facility with a man. She denied it and walked Fluker to the front doors of the Amazon facility to show him that the front doors were the only way in and out of the facility without triggering an alarm.

{¶ 7} The two returned to the vehicle where Massey was sitting in the front passenger seat. D.F. was in the back seat. On the way back to M.W.'s apartment, the conversation from earlier that morning continued that included "a lot of yelling, arguing." M.W. stated that she was angry and that she was sure she raised her voice and used profanities during the conversation.

{¶ 8} They were still arguing when they arrived at M.W.'s apartment complex. M.W. took D.F., went upstairs, and entered her apartment, which was

located on the second floor. After she set D.F. and her purse down, she began hearing what she described as "a body slamming up against my door consistently." Before she was able to unlock the door, the door swung open. M.W. stated that Fluker slammed the door open and said to her, "Bitch, you going to die. I know this n----." M.W. also heard him say, "[Massey] said you stole my phone." M.W. took D.F. and ran out of the apartment. She testified that Fluker was carrying a gun on his hip at the time.

{¶ 9} M.W. ran to the vehicle where Massey was. M.W. stated that she was in such shock and fear, she could barely "catch [her] words" when she attempted to speak to Massey. Fluker came out of the apartment, and M.W. continued to yell at them. Fluker and Massey eventually left in their vehicle.

{¶ 10} Fluker's version of events differed. He testified that after he dropped off M.W. at her apartment, he heard her "screaming at the top of her lungs." When he arrived at M.W.'s apartment, he noticed that the door to her apartment was damaged and open. Fluker speculated that M.W. had lost her key and that "she had pushed it in or whatever to get in the house that day." He stated that M.W. had D.F. in her arms and he asked her why she was screaming. M.W. then scratched his face and accused him of breaking into her house.

{¶ 11} M.W. ultimately called 911. When the police arrived, she told them what happened. Officer Tyeisha Sain ("Officer Sain") from the Cleveland Department of Police arrived on scene and contacted M.W. Officer Sain testified that the door of the apartment could not be secured because the "door was off the

hinges basically." She also noted that she observed damage to the frame of the door. M.W. also stated that her door was broken and that it was unable to be closed. She was unsure if Fluker would return, so officers gave her and D.F. a ride to her mother's house.

{¶ 12} M.W. testified Fluker continued to send her text messages, call her, and send her FaceTime videos when she was at her mother's house. She stated that she went back to her apartment later that night so maintenance could fix her door. While there, she saw Fluker walk past her building.

{¶ 13} The following morning, Fluker sent her a Facetime video at 4:20 a.m. In the video, Fluker tells M.W., "You know that bitch about to get kicked in again." M.W. continued receiving threatening messages from Fluker that were submitted into evidence. The messages included phrases like, "Watch somebody get killed," and others that M.W. believed to be threats. These messages indicated that Fluker was watching her. The messages also included photos taken of M.W.'s mother's porch.

{¶ 14} A BOLO ("be on the lookout") was submitted by the loss-prevention specialist at M.W.'s place of employment. Jessica Myers ("Myers"), an Amazon loss-prevention specialist, testified that a few days after the May 4 incident, she submitted a BOLO concerning Fluker. The purpose of the BOLO was to deny the subject of the BOLO access to the premises. In Fluker's case, Myers testified that because of the seriousness of the allegations, if Fluker entered the premises, law

enforcement would be called, rather than having on-site security approach him as is normally the case.

### C. May 12, 2024 Incident

{¶ 15} On May 12, 2024, M.W. saw Fluker again. She was walking to the bus stop when she saw Fluker driving by the gate of the Amazon facility. She immediately turned around and headed back into the facility and spoke to Officer Frank Royce ("Officer Royce") of the Euclid Police Department, who was working security at the Amazon facility that night. M.W. told Officer Royce that she had been receiving threatening texts from Fluker. Officer Royce reviewed the BOLO for Fluker that had been issued a week earlier and called Chagrin Valley Dispatch and asked them to dispatch an officer.

{¶ 16} Officer Paul Jablonski ("Officer Jablonski") of the Euclid Police Department arrived on scene and spoke with M.W. He testified that when he spoke to her, she was "nervous, afraid, just genuinely concerned for her well-being." Officer Jablonski explained that he was advised of the BOLO submitted for Fluker. M.W. also provided him with her cell phone to look at the text messages that Fluker had been sending her. Officer Jablonski described the nature of the text messages he saw as "mostly threatening in nature."

{¶ 17} Two of the text messages Officer Jablonski saw included photos of handguns, which, based on his training and experience, he believed to be real handguns. Fluker disputed this, testifying that the handguns in the photos were "BB guns, tear gas guns" and that M.W. knew "those were nothing that can get you

killed." Fluker explained, "I'm in the movies. I worked with Snoop Dogg which you have seen, sir, and that sounds crazy, but I do choreography, I do music, I do graphic design. That's part of another one of my jobs."

{¶ 18} When he arrived back at the station, Officer Jablonski stated that he received a call from Fluker. Officer Jablonski testified that Fluker told him that "he [Fluker] doesn't do anything wrong, has never done anything wrong, and he arrests bad guys now."

{¶ 19} M.W. received two phone calls from Fluker, one on May 20 and 21, 2024. These calls were played for the jury. M.W. testified that in these calls, Fluker was attempting to get her to "basically recant everything, get in touch with the detectives, the police and, you know, say I was going through postpartum and that's what caused me to do all these things."

{¶ 20} On June 20, 2024, the Cuyahoga County Common Pleas Court issued a protection order for M.W. against Fluker. The order specifically noted that Fluker "shall not initiate or have any contact" or "use any form of electronic surveillance on protected person."

{¶ 21} Notwithstanding the protection order, M.W. testified that Fluker continued to contact her. He sent her multiple messages, including a video of himself listening to her statement that she had given to police. Another message, sent in September 2024, stated, "These people downtown using you to set me up and you and you gone fall into they trap and we both gonna lose our lives and our daughter when all u had to do was stop talking to them change your number get our

life back and raise and protect [D.F.] You so stupid. You are letting . . . ." M.W. testified that "[a]t that point I felt betrayed. I felt like my safety was in jeopardy. I felt like it was kind of like — I'm not going to say life was over, but I felt, you know, that that video could go many places that it shouldn't and I just felt real betrayed. I felt real unsafe."

{¶ 22} On September 19, 2024, M.W. went to the Cleveland Division of Police, Fifth District police department to file a police report.

**D. Indictments**

{¶ 23} Fluker was charged by the Cuyahoga County Grand Jury in three separate indictments.

{¶ 24} In Case No. CR-24-692251-A, the indictment charged Fluker with the following offenses for his actions on May 4, 2024:

> 1. Aggravated burglary, a felony of the first degree, in violation of R.C. 2911.11(A)(2), with a one-year firearm specification;
>
> 2. Burglary, a felony of the second degree, in violation of R.C. 2911.12(A)(1), with a one-year firearm specification;
>
> 3. Aggravated menacing, a misdemeanor of the first degree, in violation of R.C. 2903.21(A);
>
> 4. Criminal damaging or endangering, a misdemeanor of the second degree, in violation of R.C. 2909.06(A)(1);
>
> 5. Domestic violence, a misdemeanor of the first degree, in violation of R.C. 2919.25(C); and
>
> 6. Endangering children, a felony of the fourth degree, in violation of R.C. 2919.22(A).

{¶ 25} In Case No. CR-24-692440-A, the indictment charged Fluker with the following offenses for his actions on May 12, 2024:

1. Menacing by stalking, a felony of the fourth degree, in violation of R.C. 2903.211(A)(1);

2. Menacing by stalking, a felony of the fourth degree, in violation of R.C. 2903.211(A)(1), with a furthermore clause alleging that he "trespassed on the land or premises where the victim lives, was employed, or attends school";

3. Menacing by stalking, a felony of the fourth degree, in violation of R.C. 2903.211(A)(1), with a furthermore clause alleging that he "made a threat of physical harm to or against the victim"; and

4. Aggravated menacing, a misdemeanor of the first degree, in violation of R.C. 2903.21(A).

{¶ 26} In Case No. CR-24-696027-A, the indictment charged Fluker with the following offenses for his actions occurring between the dates of September 3, 2024, through September 19, 2024:

1. Intimidation of an attorney, victim, or witness in a criminal case, a felony of the third degree, in violation of R.C. 2921.04(B)(1);

2. Violating a protection order, a felony of the third degree, in violation of R.C. 2919.27(A)(1), with a furthermore clause alleging that he "violated the protection order or consent agreement while committing a felony offense"; and

3. Violating a protection order, a felony of the third degree, in violation of R.C. 2919.27(A)(1), with a furthermore clause indicating that he had been previously convicted twice of violating a protection order.

**E. State's Motion for Joinder**

{¶ 27} On December 27, 2024, the State filed a motion to join the three indictments for trial. Fluker did not object to the State's request. Three months later, the trial court granted the State's motion and joined the three cases for trial.

**F. Trial**

{¶ 28} A jury trial began on May 12, 2025. At the conclusion of the trial, the jury returned a verdict finding Fluker guilty of the following offenses.

{¶ 29} In Case No. CR-24-692251, the jury returned a verdict of guilty of the following:

Count 2: Burglary, a felony of the second degree;

Count 3: Aggravated menacing, a misdemeanor of the first degree;

Count 4: Criminal damaging, a misdemeanor of the second degree;

Count 5: Domestic violence, a misdemeanor of the fourth degree; and

Count 6: Endangering children, a felony of the fourth degree.

{¶ 30} Fluker was found not guilty of Count 1, aggravated burglary and the one-year firearm on Count 2.

{¶ 31} In Case No. CR-24-692440, the jury returned a verdict of guilty of the following:

Counts 1, 2, and 3: Menacing by stalking, felonies of the fourth degree; and

Count 4: Aggravated menacing, a misdemeanor of the first degree.

{¶ 32} In Case No. CR-24-696027, the jury returned a verdict of guilty on the following:

Count 1: Intimidation, a felony of the third degree;

Count 2: Violating a protection order, a felony of the third degree; and

Count 3: Violating a protection order, a felony of the third degree.

**G. Sentencing**

{¶ 33} Sentencing was held on June 23, 2025. For the purposes of sentencing, in Case No. CR-24-692251 the trial court merged Counts 3, 4, 5, and 6 into Count 2 and imposed a minimum prison term of four years and a maximum prison term of six years on Count 2, Burglary. In Case No. CR-24-692440, the trial court merged Counts 2, 3, and 4 into Count 1 and imposed an 18-month prison term on Count 1, menacing by stalking. In Case No. CR-24-696027, the trial court merged Counts 2 and 3 into Count 1 and imposed a prison sentence of three years on Count 1, intimidation.

{¶ 34} The prison sentences in Case Nos. CR-24-696027 and CR-24-692251 were ordered to run consecutively to one another. The prison sentence imposed in Case No. CR-24-692440 was ordered to run concurrently. The trial court imposed an aggregate prison sentence of seven to nine years.

**H. Appeal**

{¶ 35} Fluker appeals his convictions, presenting six assignments of error for our review:

1. The State failed to present sufficient evidence to support each element for each offense [Fluker] was convicted of.

2. The jury's verdicts were against the manifest weight of the evidence.

3. The trial court committed plain error by joining three separate indictments for a single trial, thereby prejudicing [Fluker] and depriving him of a fair trial.

4. The trial court committed plain error by giving jury instructions that were incorrect, confusing, and prejudicial, thereby violating [Fluker's] right to a fair trial.

5. The trial court abused its discretion and deprived [Fluker] of a fair trial by admitting irrelevant and highly prejudicial evidence over repeated defense objections.

6. [Fluker] was denied his right to the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

## II. Law and Analysis

### A. First Assigned Error for Review — Sufficiency

{¶ 36} In his first assigned error for review, Fluker argues that the evidence presented at trial is insufficient to support his convictions for burglary, menacing by stalking, and intimidation. After a thorough review of the record, we find that the evidence was sufficient to support the convictions for each of these offenses.

### 1. Standard of Review

{¶ 37} "The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial." *State v. Wilborn,* 2024-Ohio-5003, ¶ 37 (8th Dist.), citing *State v. Cottingham,* 2020-Ohio-4220, ¶ 32 (8th Dist.). In reviewing a challenge based on sufficiency, we must "'determine

whether the evidence, if believed, would convince the average person of the defendant's guilt beyond a reasonable doubt.'" *State v. Webb,* 2025-Ohio-456, ¶ 9 (8th Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. A sufficiency review "is not a factual determination, but a question of law." *State v. Jackson,* 2025-Ohio-109, ¶ 25 (8th Dist.), citing *State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997).

{¶ 38} When reviewing the evidence, we must keep in mind that "[p]roof of guilt may be supported 'by circumstantial evidence, real evidence, and direct evidence, or any combination of all three, and all three have equal probative value.'" *Wilborn* at ¶ 38, quoting *State v. Radano,* 2017-Ohio-1034, ¶ 35 (8th Dist.). And although each type of evidence has their obvious differences, "those differences are irrelevant to the probative value of the evidence, and circumstantial evidence carries the same weight as direct evidence." *Id.,* citing *State v. Cassano,* 2012-Ohio-4047, ¶ 13 (8th Dist.). Our review of the evidence is not to determine "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins* at 390.

## 2. Analysis

### a. Burglary

{¶ 39} Fluker was convicted of burglary in violation of R.C. 2911.12(A)(1). R.C. 2911.12(A)(1) provides, in relevant part:

> (A) No person, *by force*, stealth, or deception, shall do any of the following:

> (1) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense[.]

(Emphasis added.)

{¶ 40} Fluker claims that the evidence presented at trial was insufficient to support the "force" element necessary for a burglary conviction. "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01. We have held that "[a]ny force effecting entrance, however slight, satisfies this element." *State v. Lucas,* 2024-Ohio-842, ¶ 59 (8th Dist.), citing *In re A.C.D.,* 2015-Ohio-232, ¶ 12 (12th Dist.). Thus, just "'[t]he opening of a closed door, even if unlocked, falls under the definition of force.'" *Id.,* quoting *State v. Knuckles,* 2005-Ohio-6345, ¶ 24 (8th Dist.); *accord State v. Stump,* 2014-Ohio-1706, ¶ 18 (5th Dist.); *State v. Wohlfeil,* 1987 Ohio App. LEXIS 6923, *4-5 (8th Dist. Apr. 2, 1987) (stating that "[t]he sliding of a closed but unlocked door can constitute force").

{¶ 41} M.W. testified that soon after she entered her apartment, she began to hear what sounded like "a body slamming up against my door consistently." The door was locked, and just before she able to unlock it, it swung open "pretty hard." She testified that if the door would have contacted her, it would have "messed me up." She identified Fluker as the person that broke through her door. M.W. stated that her door was damaged, the "part where it locks, it was ripped off," and she was unable to close it. This testimony alone is sufficient to support the jury's finding of force. *See State v. Jones,* 2020-Ohio-3367, ¶ 71 (8th Dist.) (noting that "[a] conviction may rest solely on the testimony of a single witness, if believed, and there is no requirement that a witness' testimony be corroborated to be believed"), citing *State v. Flores-Santiago,* 2020-Ohio-1274, ¶ 38 (8th Dist.).

{¶ 42} Fluker challenges M.W.'s credibility, asserting that she "provided multiple, conflicting accounts of how [Fluker] allegedly entered her apartment." However, "the credibility of witnesses is a matter primarily for the trier of fact and is not to be considered in a sufficiency argument as credibility goes to the weight of the evidence." *State v. Erker,* 2019-Ohio-3185, ¶ 83 (8th Dist.). As a result, whether M.W.'s testimony was credible "has no bearing on our sufficiency analysis." *Id.* Rather, if M.W.'s testimony is to be believed, it is sufficient to support the element of force necessary for his conviction of burglary.

**b. Menacing by Stalking**

{¶ 43} Fluker was convicted of menacing by stalking in violation of R.C. 2903.211(A)(1) for his actions on May 12, 2024. R.C. 2903.211(A)(1) provides,

in relevant part: "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person . . . or cause mental distress to the other person[.]"

{¶ 44} "Pattern of conduct" means "two or more actions or incidents closely related in time[.]" R.C. 2903.211(D)(1). The Ohio Supreme Court has stated that "[e]xplicit threats are not necessary to establish the elements of menacing by stalking; nonverbal actions directed at the victim may also constitute a pattern of conduct if they cause the victim to reasonably believe that physical harm or mental distress will ensue." *State v. Crawl,* 2025-Ohio-2799, ¶ 11.

{¶ 45} Fluker alleges that the evidence at trial was insufficient to demonstrate that Fluker acted knowingly because "M.W.'s own conduct, as captured on video, was so fundamentally inconsistent with her professed fear that it rendered her belief unreasonable as a matter of law."

{¶ 46} First, M.W.'s fear of physical harm and mental distress was established by her own testimony and law enforcement's observations of M.W. on May 12, 2024. *See Crawl* at ¶ 14 (holding that the victim's "mental distress was established through her testimony, her actions following the incident at her apartment, and the police officer's testimony of his observations of [the victim]"). M.W. testified that because of the numerous threatening text messages Fluker had sent her, she believed "one of these days [she] was going to die." She eventually sought a protection order from Fluker. Officer Royce testified that when M.W. first contacted him to report Fluker outside the Amazon facility, she seemed "a little

nervous and kind of worried about the situation." Officer Jablonski stated that when he arrived on scene, he spoke to M.W. and she was "nervous, afraid, just genuinely concerned for her well-being."

{¶ 47} Fluker claims that M.W. was "the aggressor, not a fearful victim." However, as discussed, M.W.'s credibility is for the finder of fact to decide and has no bearing on our sufficiency analysis. *See Erker,* 2019-Ohio-3185, at ¶ 83 (8th Dist.). As such, the evidence was sufficient to demonstrate that M.W. believed Fluker would cause physical harm to her or caused her mental distress.

{¶ 48} Second, the evidence also supports the finding that Fluker engaged in a pattern of conduct knowing that it would cause M.W. mental distress or cause her to believe that he would physically harm her. A person acts "knowingly," regardless of their purpose, if they are "aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B). "Intent is not required; only an awareness of the probable consequences of one's actions is required." *Crawl,* 2025-Ohio-2799, at ¶ 17. "It is not necessary that a defendant be able to foresee the precise consequences of his or her conduct; only that the consequences be foreseeable in the sense that what actually transpired was natural and logical in that it was within the scope of the risk that the defendant created." *State v. Benson,* 2018-Ohio-2235, ¶ 20 (8th Dist.), citing *State v. Dykas,* 2010-Ohio-359, ¶ 28 (8th Dist.).

{¶ 49} The evidence demonstrates that Fluker sent M.W. multiple threatening messages leading up to the May 12, 2024 incident. It has been established that "explicit threats are not necessary to prove menacing by stalking; nonverbal actions directed at the victim may also constitute a constitute a pattern of conduct if they cause the victim to reasonably believe that physical harm or mental distress will ensue." *Crawl* at ¶ 11, citing *State v. Smith,* 126 Ohio App.3d 193, 197-201 (7th Dist. 1998). Here, the evidence demonstrated that Fluker sent M.W. numerous messages that a reasonable person could interpret as being threatening in nature and that Fluker knew would cause M.W. to believe that he meant to cause her physical harm.

{¶ 50} Fluker's conduct of sending M.W. multiple threatening messages, showing up to her place of employment uninvited, and his past actions of breaking through the door to her apartment are sufficient to support Fluker's menacing-by-stalking conviction.

{¶ 51} Finally, Fluker argues that since his menacing-by-stalking conviction was based, in part, on the text messages he sent to M.W., he could only be charged under section (A)(2) of the R.C. 2903.211, rather than (A)(1) of which he was convicted.[1] This is not a sufficiency argument, so we decline to address it here.

---

[1] R.C. 2903.211(A)(2) provides that "[n]o person, through the use of any form of written communication or any electronic method of remotely transferring information, including, but not limited to, any computer, computer network, computer program, computer system, or telecommunication device shall post a message or use any intentionally written or verbal graphic gesture with purpose to do either of the following: (a) Violate division

App.R. 16(A)(3) provides that an appellant's brief must include "[a] statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected." Fluker has failed to raise this argument in a separate assignment of error, and pursuant to App.R. 12(A)(1)(b), we are required to determine the appeal based upon the assignments of error set forth in the briefs under App.R. 16 and, therefore, we decline to address this claim. *See State v. Blade,* 2023-Ohio-3054, ¶ 55 (8th Dist.) (declining to consider extraneous arguments that were not separately assigned as error).

### c. Intimidation

{¶ 52} Fluker was convicted of intimidation occurring between September 3, 2024, through September 19, 2024, in violation of R.C. 2921.04(B)(1). R.C. 2921.04(B)(1) provides:

> (B) No person, knowingly and by force or by unlawful threat of harm to any person or property or by unlawful threat to commit any offense or calumny against any person, shall attempt to influence, intimidate, or hinder any of the following persons:
>
> (1) The victim of a crime or delinquent act in the filing or prosecution of criminal charges or a delinquent child action or proceeding[.]

{¶ 53} This statute requires only "an attempt to influence, intimidate, or hinder." *State v. Serrano,* 2016-Ohio-4691, ¶ 44 (8th Dist.). "'The defendant need only try to create fear about or try to influence or hinder the filing or prosecution of

---

(A)(1) of this section;  (b) Urge or incite another to commit a violation of division (A)(1) of this section."

criminal charges.'" *Id.,* quoting *State v. Thompson,* 2014-Ohio-1224, ¶ 16 (7th Dist.).

{¶ 54} Fluker alleges that his conduct communicating with M.W. during the relevant period listed in the indictment "while potentially constituting a violation of the protection order, did not rise to the level of an unlawful threat of harm." The Ohio Supreme Court has noted that an "unlawful threat" proscribed by this statute is "more than just a threat, i.e., more than just a communication to a person that particular negative consequences will follow should the person not act as the communicator demands." *State v. Cress,* 2006-Ohio-6501, ¶ 41. Rather, "the statutory language in R.C. 2921.04(B), proscribing intimidation by an 'unlawful threat of harm,' is satisfied only when the very making of the threat is itself unlawful because it violates established criminal or civil law." *Id.* at ¶ 42.

{¶ 55} Here, a protection order was issued against Fluker on June 20, 2024. The order specifically noted that Fluker "shall not initiate or have any contact" or "use any form of electronic surveillance on protected person." Notwithstanding the protection order, M.W. testified that Fluker continued to contact her. He sent her multiple messages, including a video of himself listening to her statement that she had given to police. Another message, sent in September 2024, stated, "These people downtown using you to set me up and you — and you gone fall into they trap and we both going to lose our lives and our daughter when all you had to do was stop talking to them, change your number, get our life back, and raise and protect [D.F.]

You so stupid . . . ." M.W. testified that she "felt betrayed," that her "safety was in jeopardy," and that she "felt real unsafe."

{¶ 56} Fluker contacted M.W. multiple times after the June 20, 2024 protection order was issued, which is a clear violation of established criminal law. Thus, the messages Fluker sent to M.W. while this order was in place constitute "unlawful threats of harm" as contemplated under R.C. 2921.04(B). *See Serrano,* 2016-Ohio-4691, at ¶ 48 (holding that the defendant's disregard for the no-contact order would be a violation of criminal law sufficient to prove that he made "unlawful threats of harm" to the victim in an attempt to hinder or intimidate the victim from prosecuting the case).

{¶ 57} Fluker's complete indifference to the protection order, along with the messages he sent to M.W. seeking to dissuade her from prosecuting the criminal case against him, are sufficient to demonstrate that he made "unlawful threats of harm" to M.W. in order to "influence, intimidate, or hinder" the prosecution of criminal charges against him. Accordingly, there was sufficient evidence to support his conviction for intimidation in violation of R.C. 2921.04(B).

{¶ 58} Viewing the evidence in the light most favorable to the State, we find that Fluker's convictions for burglary, menacing by stalking, and intimidation are supported by sufficient evidence. Accordingly, Fluker's first assignment of error is overruled.

## B. Second Assigned Error for Review — Manifest Weight

{¶ 59} In his second assigned error for review, Fluker alleges that his convictions are against the manifest weight of the evidence. We disagree.

### 1. Standard of Review

{¶ 60} In contrast to a sufficiency challenge, a challenge with respect to the weight of the evidence concerns """the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. . . . Weight is not a question of mathematics, but depends on its effect in inducing belief."""" *State v. Hughes-Davis,* 2025-Ohio-3151, ¶ 24 (8th Dist.), quoting *Eastley v. Volkman,* 2012-Ohio-2179, ¶ 12, quoting *Thompkins,* 78 Ohio St.3d at 387. The Ohio Supreme Court has stated that when conducting a manifest-weight review, the reviewing court "must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re Z.C.,* 2023-Ohio-4703, ¶ 14, citing *Eastley* at ¶ 20. As such, a manifest-weight-of-the-evidence challenge will be sustained """only in the exceptional case in which the evidence weighs heavily against the conviction."""" *State v. Dodson,* 2025-Ohio-1733, ¶ 12 (8th Dist.), quoting *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist. 1983).

## 2. Analysis

{¶ 61} Fluker argues that "the verdicts rested almost entirely on the incredible and contradictory testimony of the complaining witness, M.W." He alleges that M.W.'s testimony "was not only inconsistent with her own prior statements but was also directly refuted by objective evidence, while [his] account was far more plausible and consistent."

{¶ 62} Fluker claims that M.W. was not credible because of "her repeated, dramatic claims that the door was 'kicked down,' 'off its hinges,' and the 'whole door is gone' were proven false by the body camera footage that showed the door still attached to its frame." He posits that the testimony he provided at trial is a more plausible account of what occurred.

{¶ 63} Fluker had the opportunity to cross-examine M.W. on her statements. On cross-examination, M.W. conceded that the door was not "busted down." She explained that "the way I described things was at high emotions. I could have came incorrect, but I was using my emotions. That's, you know, a bit exaggerated, but it's in the context of the door being busted open." With respect to her comment that the hinge was off, she stated that "I'm no maintenance person so when I said hinge, what I meant by the hinge was — I don't know what to call that."

{¶ 64} It has long been recognized that "'inconsistencies or contradictions in a witness's testimony do not entitle a defendant to a reversal of a trial.'" *State v. Gilmore,* 2026-Ohio-577, ¶ 26 (8th Dist.), quoting *State v. Rentas,* 2024-Ohio-732, ¶ 16 (8th Dist.), citing *State v. Solomon,* 2021-Ohio-940, ¶ 62 (8th Dist.). "Nor does

the presence of conflicting testimony render a verdict against the manifest weight of the evidence." *State v. Clark,* 2025-Ohio-5342, ¶ 52 (8th Dist.), citing *State v. Pace,* 2025-Ohio-2874, ¶ 62 (10th Dist.). As such, "[t]he trier of fact is free to accept or reject any or all testimony of any witness." *Parma v. Singh,* 2018-Ohio-5235, ¶ 21 (8th Dist.), citing *State v. Smith,* 2010-Ohio-4006, ¶ 16 (8th Dist.).

{¶ 65} Here, the jury was in the best position to judge M.W.'s testimony, her exaggerated statements concerning the damage done to her door, and Fluker's alternative account of what occurred. The jury had the ability to weigh these competing accounts considering the totality of the evidence that includes law enforcement's testimony concerning M.W.'s demeanor at the time of the offenses and the numerous communications Fluker sent to M.W. In doing so, the jury returned verdicts finding Fluker not guilty of Count 1, aggravated burglary and the one-year firearm on Count 2, as set forth in Case No. CR-24-692251. The jury did return verdicts of guilt with respect to all remaining counts. As a result, we cannot say that this is one of those extraordinary cases where the jury clearly lost its way.

{¶ 66} Accordingly, Fluker's second assignment of error is overruled.

## C. Third Assigned Error for Review – Joinder

{¶ 67} In his third assigned error for review, Fluker claims that the trial court committed plain error in joining these cases to be tried together. After a thorough review of the record, we find that the trial court did not err in granting the State's motion to join these three cases.

**1. Standard of Review**

{¶ 68} Generally, "we review the trial court's decision on joinder for an abuse of discretion." *State v. Lee*, 2017-Ohio-1449, ¶ 15 (8th Dist.), citing *State v. Dean*, 2015-Ohio-4347, ¶ 58. In this case, however, Fluker did not object to the State's motion to join the indictments and has therefore waived all but plain error. *State v. Hill*, 2011-Ohio-2523, ¶ 9 (8th Dist.), citing *State v. Harris-Powers*, 2007-Ohio-389, ¶ 17 (8th Dist.).

{¶ 69} Pursuant to Crim.R. 52(B), plain errors are any "errors or defects affecting substantial rights [and] may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. Thus, the party raising plain error must demonstrate "that there was an error, that the error was plain or obvious, that but for the error the outcome of the proceeding would have been otherwise, and that reversal must be necessary to correct a manifest miscarriage of justice." *State v. Buttery*, 2020-Ohio-2998, ¶ 7, citing *State v. Quarterman*, 2014-Ohio-4034, ¶ 16.

**2. Applicable Law**

{¶ 70} Crim.R. 8(A) governs joinder of offenses in a single indictment. It provides that two or more offenses may be joined in a single indictment where they "are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting

parts of a common scheme or plan, or a part of a course of criminal conduct." Crim.R. 8(A). We have held that Crim.R. 8(A) "allows indictments to be joined together for a single trial." *State v. Quinn,* 2022-Ohio-2038, ¶ 9 (8th Dist.), citing *State v. Shine,* 2018-Ohio-1972, ¶ 28 (8th Dist.).

{¶ 71} "Joinder of defendants and the avoidance of multiple trials is favored in the law for many reasons. Joinder conserves judicial and prosecutorial time, lessens the not inconsiderable expenses of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries." *State v. Thomas,* 61 Ohio St.2d 223, 225 (1980). As such, "joinder is the rule rather than the exception." *State v. Hudson,* 2013-Ohio-1992, ¶ 10 (8th Dist.). And it "is to be 'liberally permitted.'" *State v. Wardlaw,* 2025-Ohio-2221, ¶ 41 (8th Dist.), quoting *State v. Schaim,* 65 Ohio St.3d 51, 58 (1992).

{¶ 72} "'While there is always the possibility of prejudice from joinder of offenses, once the state has concluded its case, the defendant bears the burden of demonstrating actual prejudice from the joinder.'" *State v. Miller,* 2023-Ohio-1141, ¶ 79 (8th Dist.), quoting *State v. Cisternino,* 1994 Ohio App. LEXIS 4856 (8th Dist. Oct. 27, 1994). "The defendant 'must show "compelling, specific, and actual prejudice from the court's refusal to grant the motion to sever."'" *Wardlaw* at ¶ 45, quoting *State v. Hand,* 2006-Ohio-18, ¶ 166, quoting *State v. Torres,* 66 Ohio St.2d 340, 343 (1981).

{¶ 73} The State may refute a defendant's claim of prejudice in one of two ways: "(1) a showing that the evidence of each crime is simple and direct (the 'joinder test'), or (2) evidence of the other crimes would be admissible even if the counts were severed (the 'other acts' test)." *Miller* at ¶ 80, citing *State v. Lott,* 51 Ohio St.3d 160, 163 (1990). "The 'joinder test' is satisfied when the evidence presented at trial is 'simple and direct.'" *Wardlaw* at ¶ 46, citing *State v. Belle,* 2019-Ohio-787, ¶ 24-25 (8th Dist.). "'Simple and direct' evidence means the evidence of each crime is 'so clearly separate and distinct as to prevent the jury from considering evidence of [one crime] as corroborative as the other.'" *Miller* at ¶ 81, quoting *Belle* at ¶ 25.

{¶ 74} The purpose of the "joinder test" is to "prevent the jury from improperly considering evidence of various crimes as corroborative of each other." *Miller* at ¶ 82, citing *State v. Echols,* 128 Ohio App.3d 677, 694 (1st Dist. 1998). Thus, "a trier of fact is believed capable of segregating the proof of multiple charges when the evidence to each of the charges is uncomplicated." *State v. Lunder,* 2014-Ohio-5341, ¶ 33 (8th Dist.), citing *Torres* at 343-344. As a result, "'Ohio appellate courts routinely find no prejudicial joinder where the evidence is presented in an orderly fashion as to the separate offenses or victims without significant overlap or conflation of proof.'" *Wardlaw,* 2025-Ohio-2221, at ¶ 82 (8th Dist.), quoting *State v. Echols,* 2015-Ohio-5138, ¶ 16 (8th Dist.).

{¶ 75} The "other acts" test, on the other hand, is satisfied where the State can show that the evidence of the other offenses would have been admissible as "other acts" under Evid.R. 4040(B) if the offenses had been tried separately.

*Wardlaw* at ¶ 48, citing *Lott* at 163. However, when the evidence is "simple and direct" under the joinder test "an accused is not prejudiced by joinder regardless of the nonadmissibility of evidence of the crimes as other acts under Evid.R. 404(B)." *Miller,* 2023-Ohio-1141, at ¶ 20 (8th Dist.). "Consequently, '[i]f the state can meet the [requirements of] the joinder test, it need not meet the requirements of the stricter "other acts" test.'" *Wardlaw* at ¶ 48, quoting *State v. Franklin,* 62 Ohio St.3d 118, 122 (1991).

### 3. Analysis

{¶ 76} Fluker alleges that the joining of the three indictments was "highly prejudicial," particularly with the evidence introduced concerning the intimidation charge. He alleges that the evidence relevant to support the intimidation charge "had a prejudicial spillover effect on the jury's consideration of the earlier, unrelated burglary and stalking charges."

{¶ 77} First, we note that Fluker's "conclusory and speculative arguments are not sufficient to demonstrate prejudice by joinder." *Wardlaw*, 2025-Ohio-2221, at ¶ 49 (8th Dist.), citing *State v. Porcher,* 2011-Ohio-5976, ¶ 2 (2d Dist.) (conclusory allegations of prejudice insufficient); *State v. Gravely,* 2010-Ohio-3379, ¶ 36 (10th Dist.) (speculative arguments of prejudice insufficient); *Torres,* 66 Ohio St.2d at 344 (speculative arguments of prejudice insufficient).

{¶ 78} Second, we have long recognized that "'other acts' evidence is admissible where they are so blended or connected with the one on trial as that proof of one incidentally involved the other; or explained the circumstances therefore;

or tends logically to prove an element of the crime charged." (Cleaned up.) *State v. Johnson,* 2004-Ohio-2698, ¶ 27 (8th Dist.). "'In other words, "[E]vid.R. 404(B) does not apply when the acts are intrinsic as opposed to extrinsic, i.e., the acts are part of the events in question or form part of the immediate background of the alleged act which forms the basis for the crime charged."'" *State v. Kohler,* 2024-Ohio-3302, ¶ 40 (8th Dist.), quoting *State v. Jones,* 2018-Ohio-498, ¶ 140 (8th Dist.), *rev'd on other grounds,* 2020-Ohio-6729, quoting *State v. Crew,* 2010-Ohio-3110, ¶ 99 (2d Dist.).

{¶ 79} "The jury is entitled to hear evidence that allows them to gather "'a complete picture of what occurred"' and 'fully comprehend the acts that formed the immediate background of the charged crimes.'" *Id.* at ¶ 43, quoting *Miller,* 2023-Ohio-1141, at ¶ 92 (8th Dist.). We cannot expect the jury to ""'make its decision in the void — without knowledge of the time, place and circumstances of the acts which form the basis of the charge."'" *Miller* at ¶ 92, quoting *Wilkinson* at 317, quoting *United States v. Roberts,* 548 F.2d 665, 667 (6th Cir. 1977).

{¶ 80} Here, in the burglary case, Fluker broke into M.W.'s apartment by breaking open her door. Afterwards, in the menacing-by-stalking case, Fluker sent M.W. multiple threatening messages, one of which specifically threatened to break down her door in the future: "I'm about to see what n---- around my child. Even if that new door got to come off. I didn't break the door last time like you lied but I will about my daughter." In the intimidation case, as discussed above, the evidence was sufficient to demonstrate that Fluker made "unlawful threats of harm" to the

victim in an attempt to hinder or intimidate the victim from prosecuting the case. These three cases form a course of criminal conduct, and they were properly joined. *See State v. Gordon,* 2018-Ohio-259, ¶ 19. The evidence for each case would have been admitted at each individual trial, because the jury was entitled to know the immediate background of the cases.

{¶ 81} Furthermore, "evidence of conduct designed to impede or prevent a witness from testifying is admissible to show consciousness of guilt." *State v. Conway,* 2006-Ohio-2815, ¶ 68, citing *State v. Williams,* 79 Ohio St.3d 1, 11 (1997). As such, the evidence related to the intimidation case would have been admissible in separate trials for the burglary and menacing by stalking to demonstrate Fluker's consciousness of guilt in those cases. And on a similar note, the evidence concerning the burglary and menacing-by-stalking cases would have been admissible in a separate trial for the intimidation case. *See State v. Marshall,* 2025-Ohio-5760, ¶ 31-32 (8th Dist.).

{¶ 82} Since the evidence of each of these joined cases would have been introduced in each case had they been tried separately, we find that the trial court did not err in joining them for the purposes of trial. Accordingly, Fluker's third assignment of error is overruled.

**D. Fourth Assigned Error for Review – Jury Instructions**

{¶ 83} In his fourth assigned error for review, Fluker challenges certain jury instructions he alleges were improper and "created a substantial likelihood that the

jury was misled, affecting the outcome of the trial." He directs us to three separate instructions, each of which will be addressed below.

### 1. Applicable Law

{¶ 84} Generally, "[t]rial courts have broad discretion in determining whether the evidence presented at trial was sufficient to warrant a particular jury instruction." *State v. Echevarria,* 2018-Ohio-1193, ¶ 27 (8th Dist.), citing *State v. Williams,* 2015-Ohio-172, ¶ 35 (8th Dist.). Jury instructions must "'fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder.'" *State v. White,* 2015-Ohio-492, ¶ 46, quoting *State v. Comen,* 50 Ohio St.3d 206 (1990), paragraph two of the syllabus.

### 2. Analysis

### a. Date of Prior Convictions

{¶ 85} When instructing the jury of the domestic-violence charge set forth in Count 5 of Case No. CR-24-692251, the court incorrectly noted that one of Fluker's prior convictions set forth in the furthermore clause had occurred on "the 19th of November 2024[.]" The correct date of the prior conviction, as set forth in the indictment, is "the 19th day of November 2014[.]" This error was immediately brought to the attention of the trial court by defense counsel, and the trial court corrected its error to the jury:

> THE COURT: So in this furthermore that I read to you, this is November 2014. I said that wrong.

[DEFENSE COUNSEL]:  Thank you, your Honor.

THE COURT: No problem.  I did it again.  This November is 2014, not 2024.  Those are my errors.  Okay.

{¶ 86} Fluker alleges that even though the error was corrected, "the initial misstatement was prejudicial."  We disagree.

{¶ 87} It has been well-established that a "jury is presumed to follow the trial court's instructions." *State v. McCay,* 2007-Ohio-4051, ¶ 30 (8th Dist.), citing *Pang v. Minch,* 53 Ohio St.3d 186 (1990).  This includes any curative instructions intended to remedy any errors or irregularities that occur during trial.  *State v. West,* 2003-Ohio-7067, ¶ 38 (8th Dist.), citing *State v. Zuern,* 32 Ohio St.3d 56, 61 (1987).  Thus, we find that the court's initial misstatement concerning the date of the conviction of the prior offense was cured when trial court advised the jury of the error and provided the jury with the correct date of the prior conviction.

## b. Instructions Concerning the Use of Prior Convictions

{¶ 88} Fluker's prior domestic-violence convictions were introduced for the limited purpose to support essential enhancing elements of specific offenses listed in the indictment.  Nonetheless, Fluker argues that the jury was instructed that these offenses could also be used to prove propensity under Evid.R. 404(B).  He is mistaken.

{¶ 89} The initial jury instructions did include improper Evid.R. 404(B) language, instructing the jury that it could consider the prior convictions for several exceptions listed under Evid.R. 404(B).  Prior to being read to the jury, a discussion

was held between the parties wherein defense counsel objected to the improper Evid.R. 404(B) language. The trial court ultimately agreed to remove the language, prior to reading the instructions to the jury. With respect to Fluker's prior convictions, the jury was instructed as follows:

> Counts 5 and 6 in case number 692251, Count 1 in case number 692440, use of prior conviction: Credibility, other purposes, and enhancing the degree of an offense.
>
> Evidence was received that the defendant was convicted of domestic violence and/or attempted domestic violence and/or endangering children and/or menacing by stalking. That evidence was received only for a limited purpose. *It was not received, and you may not consider it, to prove the character of the defendant in order to show that he acted in conformity or accordance with that character.*
>
> Evidence was received that the defendant was convicted of domestic violence and/or attempted domestic violence and/or endangering children and/or menacing by stalking. *That evidence was received because a prior conviction is an element of the offense charged. It was not received, and you may not consider it, to prove the character of the defendant in order to show that he acted in conformity and/or accordance with that character.*
>
> Counts 5 and 6 in case number 692251; Count 1 in case number 692440. Evidence was received about the commission of crimes other than the ones with which the defendant is charged in this trial. That evidence was received only for a limited purpose. *It was not received, and you may not consider it, to prove the character of the defendant in order to show that he acted in conformity or accordance with that character.*
>
> Evidence was received that the defendant was convicted of domestic violence and/or attempted domestic violence and/or endangering children and/or menacing by stalking.
>
> That evidence was received because a prior conviction is an element of the offense charged. *It was not received, and you may not consider*

*it, to prove the character of the defendant in order to show that he acted in conformity and/or accordance with that character.*

(Emphasis added.)

{¶ 90} Contrary to Fluker's assertions, the jury was never instructed that the prior convictions could be used for propensity evidence. Rather, the court explicitly instructed the jurors, multiple times, that they could not use the prior convictions "to prove the character of [Fluker] in order to show that he acted in conformity and/or accordance with that character."

{¶ 91} Since the trial court advised the jurors that Fluker's prior convictions could only be considered as an element of the offense charged and that they could not consider it as propensity evidence, Fluker's argument on this point is wholly without merit.

### c. Deadly Weapon Inference

{¶ 92} With respect to the aggravated burglary-charge set forth in Count 1 of Case No. CR-24-692251, the court instructed the jury concerning the use of a deadly weapon as follows:

> Inference. Use of deadly weapon. You may infer a purpose to cause the death of another when the natural or probable consequence of the defendant's act is to produce death in light of all the surrounding circumstances. Such circumstances include the weapon used and its capability to destroy life.
>
> If you find that the defendant used a deadly weapon against another in a manner calculated to destroy life, you may but are not required to infer the purpose to cause death from the use of the weapon. Whether an inference is made rests entirely with you.

{¶ 93} Fluker objected to the inclusion of this instruction below.

{¶ 94} Fluker alleges that this instruction was improper "because there was absolutely no evidence presented at trial that [Fluker] 'used' a firearm in any manner, let alone in a manner 'calculated to destroy life.'"

{¶ 95} When determining "'whether the presence of sufficient evidence existed in the record to support the giving of a proposed jury instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction.'" *State v. Perez,* 2020-Ohio-100, ¶ 22 (8th Dist.), quoting *State v. Risner,* 120 Ohio App.3d 571, 574 (3d Dist. 1997). In doing so, we are reminded that "we may not judge a single instruction in isolation, but rather in the context of the overall charge." *State v. Copeland,* 2016-Ohio-1537, ¶ 28 (8th Dist.), citing *State v. Madrigal,* 87 Ohio St.3d 378, 396 (2000). "Thus, we must consider the jury instructions 'as a whole' and then determine whether the jury probably misled the jury in manner materially affecting the complaining party's substantial rights." *Id.*

{¶ 96} Here, there is no evidence in the record indicating that Fluker used a firearm in a manner "calculated to destroy life." M.W. did testify that when Fluker broke into her apartment, he had a firearm on his hip. There was also evidence that he sent text messages to M.W. with pictures of firearms in a threatening manner. But there is no evidence that he removed the firearm from his hip, shot the firearm, or used it in a manner one could reasonable be described as "calculated to destroy life." As such, the evidence at trial was not sufficient to support this instruction.

**{¶ 97}** Nonetheless, we may not ""reverse a conviction in a criminal case due to jury instructions unless it is clear that the jury instructions constituted prejudicial error.""" *Echevarria,* 2018-Ohio-1193, at ¶ 29 (8th Dist.), quoting *State v. Shepherd,* 2016-Ohio-931, ¶ 25 (8th Dist.), quoting *State v. McKibbon,* 2002-Ohio-2041, ¶ 27 (1st Dist.). As such, Fluker must also demonstrate that he was prejudiced by the instruction. He has not done so.

**{¶ 98}** Fluker alleges that the inclusion of the jury instruction "painted [him] as a bad man and again was made worse by the joinder or [sic] several offenses making it appear to the jury that [he] had it out for [M.W.]" First, it must be noted that the jury rejected the allegations that Fluker was in possession of a firearm during the commission of these offenses, finding him not guilty of the aggravated-burglary charge as well as not guilty of the one-year firearm specification attached to the burglary charge. Moreover, the jury's verdict demonstrates that it considered the instruction given and rejected the allegation that Fluker utilized a firearm during the commission of these offenses.

**{¶ 99}** Second, as discussed in assignment of error Nos. 1 and 2, the evidence presented at trial demonstrated a clear course of conduct by Fluker beginning on May 4, 2024. It cannot be said that in light of the evidence presented at trial and the jury's rejection of the charge that Fluker utilized a firearm in this case, that the court's inclusion of the "deadly weapon" prejudiced Fluker.

**{¶ 100}** Accordingly, Fluker's fourth assignment of error is overruled.

## E. Fifth Assigned Error for Review – Admission of Evidence

{¶ 101}In his fifth assignment of error, Fluker claims that the trial court abused its discretion by "admitting improper evidence that was irrelevant, cumulative, and substantially more prejudicial than probative in violation of Evid.R. 403 and 404." The evidentiary rulings he challenges will be discussed below.

### 1. Standard of Review

{¶ 102} We have long recognized that the "admission or exclusion of evidence lies in the sound discretion of the trial court and a reviewing court will not reverse the trial court's decision absent an abuse of discretion." *State v. Payne,* 2019-Ohio-4158, ¶ 38 (8th Dist.), citing *State v. Sage,* 31 Ohio St.3d 173, 180 (1987). "The term 'abuse of discretion' means a ruling that is unreasonable, arbitrary, or unconscionable." *State v. McAlpin,* 2026-Ohio-148, ¶ 14. However, "[c]ourts do not have discretion to erroneously apply the law." *Shiftmed, LLC v. Westchester Parkway Consulting, LLC,* 2025-Ohio-1554, ¶ 18 (8th Dist.), citing *Johnson v. Abdullah,* 2021-Ohio-3304, ¶ 39. We are reminded that "when applying the abuse-of-discretion standard, 'we should not substitute our judgment for that of the trial court.'" *T.C. v. R.B.C.,* 2025-Ohio-1544, ¶ 10 (8th Dist.), quoting *Mills v. Mills,* 2025-Ohio-452, ¶ 28 (8th Dist.).

### 2. Analysis

### a. Introduction of Jail Calls

{¶ 103} Fluker argues that the trial court erred in allowing the State to introduce jail calls that took place outside the timeframe of the indicted offenses. Fluker does not dispute or challenge the content of these calls. Rather, he argues that these calls should not have been admitted since they "constituted evidence of a separate, uncharged crime of attempting to influence a witness." Officer Poole testified that in these calls it appears that "[Fluker is] trying to intimidate or motivate the victim not to come to court."

{¶ 104} It has long been recognized that "evidence of threats or intimidation of witnesses reflects a consciousness of guilt that is similar to evidence of flight to avoid prosecution, efforts made to cover up a crime, or intimidation of witnesses and is admissible as admission by conduct." *State v. Washington,* 2024-Ohio-1056, ¶ 44 (8th Dist.), citing *State v. McLeod,* 2006-Ohio-7076, ¶ 30, citing *State v. Richey,* 64 Ohio St.3d 353, 357 (1992); *accord State v. White,* 2016-Ohio-1405, ¶ 53 (10th Dist.) (holding that admission of jail calls "was not error because that was appropriate evidence of consciousness of guilt").

{¶ 105} Fluker argues that consciousness of guilt may be used only to show that a defendant is testifying untruthfully. In support, he cites *State v. McKelton,* 2016-Ohio-5735, ¶ 135, 137. *McKelton* makes no such limitation. Fluker cites to a portion of the *McKelton* decision that discusses the use of a witness's prior out-of-court statements for impeachments purposes and the limitations concerning the

admission of extrinsic evidence concerning those statements.  That is not the issue here.

{¶ 106}  Rather, further in the opinion, the *McKelton* Court held that it was permissible for a police detective to testify about a jailhouse letter the defendant had sent to a witness, indicating a plan to post names of potential witnesses at a local funeral parlor in order to "convey a 'subtle' message that their safety was in peril." *Id.* at ¶ 222.  The court reasoned, "Evidence of plans to threaten witnesses was probative of [the defendant's] consciousness of guilt as well as [his] method of operating, and the defense had opportunity to press [the testifying detective] about the basis for his opinion." *Id.* at ¶ 223.  In short, Fluker's reliance on *McKelton* is misplaced, since it rejects the limitation Fluker proposes.

{¶ 107}  For these reasons, the trial court did not err in allowing the State to introduce the jail calls since they were introduced to demonstrate Fluker's consciousness of guilt.

### b. Hearsay

{¶ 108}  Next, Fluker alleges that the trial court admitted several instances of inadmissible hearsay over his objections.  We will address each instance in turn.

{¶ 109}  Hearsay is defined as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement."  Evid.R. 801(C).  "If either element is missing — (1) a statement or (2) offered for its truth — the testimony is not hearsay." *Washington,* 2024-Ohio-1056, at ¶ 18 (8th Dist.).  Such hearsay statements are

presumptively inadmissible. Evid.R. 802; *State v. Maxwell,* 2014-Ohio-1019, ¶ 129. Pursuant to Evid.R. 802, hearsay may be admissible if it falls within a defined exception "provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio." "The historic purpose of the hearsay rule is 'to exclude statements of dubious reliability that cannot be tested by cross-examination.'" *State v. Wingfield*, 2019-Ohio-1644, ¶ 33 (8th Dist.), quoting *State v. Yarbrough*, 2002-Ohio-2126, ¶ 70.

### i. M.W.'s Statement to Police Indicating She Was Afraid of Fluker

{¶ 110} Officer Nicholas Edington ("Officer Edington") of the Euclid Police Department was assigned to investigate this case. He testified that when he received the file, he contacted M.W. by phone. He described her demeanor while speaking with her as "very much afraid of the accused. She was worried that he may be accessing her apartment without her knowledge." The trial court overruled defense counsel's objection to this testimony. Fluker asserts that the trial court erred in doing so because these statements do not fall under a recognized hearsay exception.

{¶ 111} The State does not dispute that these statements were hearsay. Rather, the State argues this testimony falls within the state-of-mind exception to the hearsay rule set forth in Evid.R. 803(3). We agree that part of M.W.'s statement falls within this exception.

{¶ 112} Evid.R. 803(3) allows the introduction of a "statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health) . . . ." "'Testimony that a victim was fearful falls under this hearsay exception and is *properly* admitted.'" (Emphasis added.) *Jackson,* 2025-Ohio-109, at ¶ 43 (8th Dist.), quoting *State v. Tibbetts,* 92 Ohio St.3d 146, 158 (2001). Therefore, the part of Officer Edington's testimony indicating that M.W. was afraid when he spoke to her was admissible.

{¶ 113} However, "'[t]he state-of-mind exception . . . does not permit witnesses to testify to the declarant's statements as to why he held a particular state of mind.'" *Id.,* quoting *Tibbetts* at 158. The State concedes, and we agree, that the portion of Officer Edington's statement indicating that M.W. "was worried that he may be accessing her apartment without her knowledge" does not fall under the Evid.R. 803(3) exception to the hearsay rule.

{¶ 114} Since the introduction of this statement was error, we must determine whether the error was harmless. "'The main premise behind the hearsay rule is that the adverse party is not afforded the opportunity to cross-examine the declarant.'" *State v. Campbell,* 2014-Ohio-2181, ¶ 14 (8th Dist.), quoting *State v. Primeau,* 2012-Ohio-5172, ¶ 69 (8th Dist.). As a result, "we have found hearsay error to be harmless where the defense had the opportunity to cross-examine the declarant." *Id.,* citing *Primeau* at ¶ 69.

{¶ 115} Here, M.W. testified after Officer Edington. M.W. testified that police officers took her to her mother's house after Fluker damaged her door, explaining "[m]y door was broke and I didn't know if he was going to come back." As such, this statement was not only repeated by the declarant, M.W., while on the stand, it was subject to cross-examination by the defense. *See State v. Wallace,* 2021-Ohio-4612, ¶ 33 (8th Dist.) (recognizing that "'the erroneous admission of inadmissible hearsay that is cumulative to properly admitted testimony constitutes harmless error'"), quoting *Peffer v. Cleveland Clinic Found.,* 2011-Ohio-450, ¶ 28 (8th Dist.), citing *State v. Williams,* 38 Ohio St.3d 346 (1988). For these reasons, we find the introduction of this statement to be harmless.

### ii. Identification of Fluker's Hands in a Picture

{¶ 116} Fluker next argues that the court erred in allowing Officer Edington to testify concerning M.W.'s identification of Fluker's hands in a picture Fluker had sent to M.W. Officer Edington testified that "[M.W.] identified those as Cecil Fluker's hand due to the tattoos." Fluker alleges that this was inadmissible hearsay.

{¶ 117} Evid.R. 801(D)(1)(c) provides, in relevant party, that "[a] statement is not hearsay if . . . [t]he declarant testifies at trial or hearing and is subject to examination concerning the statement, and the statement is . . . one of identification of a person soon after perceiving the person, if the circumstances demonstrate the reliability of the prior identification." "This identification may be established by the person making the identification or a third person to whom or in whose presence the identification was made." *State v. Scott,* 2024-Ohio-975, ¶ 30 (8th Dist.).

{¶ 118} Here, M.W. testified that Fluker was the person in the photograph holding the guns. She was also subject to cross-examination. With respect to the reliability of the identification, this was not a case where M.W. was unfamiliar with Fluker. M.W. testified that she had known him for four years and they have a child together. She testified that she lived with Fluker for a period of time and that even after she got a place of her own, she was in contact with Fluker regularly, often getting rides from him to and from work. For these reasons, we find that Officer Edington's testimony noting that M.W. had identified Fluker's hands in the picture holding two guns was not hearsay under Evid.R. 801(D)(1)(c) and was therefore properly admitted.

{¶ 119} Accordingly, Fluker's fifth assignment of error is overruled.

**F. Sixth Assigned Error for Review — Ineffective Assistance of Counsel**

{¶ 120} In his sixth assigned error for review, Fluker alleges that he was denied constitutionally effective assistance of counsel. He raises several challenges concerning his trial counsel's performance, each of which we will address below.

**1. Applicable Law**

{¶ 121} "In order to substantiate a claim for ineffective assistance of counsel, a defendant must satisfy a two-prong test." *State v. Jefferson,* 2025-Ohio-2008, ¶ 14 (8th Dist.). "First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client." *State v. Bradley*, 42 Ohio St.3d 136, 141 (1989). To establish this first prong, a "defendant

must show that 'counsel's representation fell below an objective standard of reasonableness.'" *Id.* at 142, quoting *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). "[B]ecause of the difficulties inherent in making [such an] evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Bradley* at 142, quoting *Strickland* at 689.

{¶ 122} "[Second], and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." *Bradley* at 141-142. To establish that one has been "prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would be different." *Id.* at 143.

### 2. Analysis

### a. Failure to Request a Mistrial

{¶ 123} Fluker first argues that defense counsel was ineffective for failing to request a mistrial following a courtroom disruption involving a medical emergency that prompted the trial judge to order Fluker to be taken into custody in front of the jury. The record reflects that during Officer Poole's testimony, one of the bailiffs sitting at the bailiff's desk collapsed, causing a loud thud. As the jury was exiting the courtroom, the trial judge instructed the deputies to take Fluker into custody.

{¶ 124} Concerned that the jury may have heard the judge order Fluker to be taken into custody, the parties voir dired each juror individually. Of all the jurors, only Jurors 5, 7, and 10 stated that they heard the judge's order to take Fluker into custody and each assured the court that this did not affect their ability to remain fair and impartial.

{¶ 125} Afterwards, the parties were given the opportunity to argue whether they were willing to go forward with the trial. Defense counsel stated: "After reviewing case law, consulting with colleagues back in Columbus, and consulting with Mr. Fluker as well, we're ready to move forward. I think that the key point probably was voir diring each of the jurors with the responses they gave. Again, our view says let's move forward."

{¶ 126} We must note that by telling the court that the defense was ready to move forward after the disruption, rather than request a mistrial, Fluker invited the error he now complains about on appeal. The invited-error doctrine "'is a branch of the waiver doctrine that estops a party from seeking to profit from an error that the party invited or induced.'" *O'Malley v. Laborers' Internatl. Union of N. Am. Local 860,* 2024-Ohio-3103, ¶ 17 (8th Dist.), quoting *Koch v. Rist,* 89 Ohio St.3d 250, 256 (2000). It provides that a party "may not 'take advantage of an error which he himself invited or induced.'" *State v. Grate,* 2020-Ohio-5584, ¶ 197, quoting *Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co., Lincoln-Mercury Div.,* 28 Ohio St.3d 20 (1986), paragraph one of the syllabus. In short, "[a] defendant "'may not make an affirmative and apparent strategic decision at trial and then complain on appeal

that the result of that decision constitutes reversible error.""" *State v. West,* 2013-Ohio-96, ¶ 16 (8th Dist.), quoting *State v. Doss,* 2005-Ohio-775, ¶ 7, quoting *United States v. Jernigan,* 341 F.3d 1273 (7th Cir. 2003).

{¶ 127} This court has recognized that

> "considering an ineffective assistance of counsel claim brought about as a result of invited error would necessarily vitiate our ruling on invited error. There is no point in having a stringent invited error doctrine only to allow it to be overcome by finding counsel ineffective for having invited the error. In any event, an invited error involves the exercise of trial strategy, and the courts have repeatedly held that an appellate court will not question matters of trial strategy."

*Id.* at ¶ 27, quoting *Doss* at ¶ 9. And since we must presume the competence of a licensed attorney when reviewing a claim of ineffective assistance, we must "generally refrain from second-guessing trial counsel's strategy, even where that strategy is questionable, and appellate counsel claims that a different strategy would have been more effective." *Id.,* citing *State v. Jalowiec,* 2001-Ohio-26.

{¶ 128} Here, the Ohio Supreme Court has stated that while no one should be tried while in shackles, "the danger of prejudice is slight where a juror's view of defendants in custody is brief, inadvertent and outside the courtroom." *State v. Kidder,* 32 Ohio St.3d 279, 285-286 (1987); *see also State v. Weil,* 2025-Ohio-657, ¶ 15 (4th Dist.) ("[A] single reference to the incarceration status of the defendant does not have the same impact as wearing prison clothing throughout a trial."), citing *State v. Sharp,* 2010-Ohio-3470, ¶ 107 (12th Dist.).

{¶ 129} Further, the court conducted a voir dire of each individual juror. Only three jurors indicated that they heard the trial judge order Fluker to be taken

into custody, and each juror indicated that this did not affect their ability to be fair and impartial. For these reasons, we hold that defense counsel's decision to go forward with trial, rather than move for a mistrial, fell within the scope of reasonable trial strategy.

### b. Failure to Raise Speedy Trial

{¶ 130} Fluker next argues that trial counsel was ineffective for failing to file a motion to dismiss the indictments on statutory and constitutional speedy-trial grounds. Since Fluker's speedy-trial rights were not violated, trial counsel cannot be said to have been ineffective for failing to raise the issue below.

### i. Applicable Law

{¶ 131} When a felony is pending against a defendant, the State is required to bring the individual to trial within 270 days of his arrest. R.C. 2945.71(C)(2). "If the defendant is not arrested for the offense, speedy trial time begins on the day he is served with the indictment." *State v. Shabazz,* 2011-Ohio-2260, ¶ 25 (8th Dist.). If the individual is held in jail in lieu of bail, each day in jail counts as three days; as a result, the defendant must be brought to trial within 90 days if incarcerated. R.C. 2945.71(E). However, "[t]his 'triple count' provision applies only when the defendant is being held in jail solely on the pending charge." *State v. Sanchez,* 2006-Ohio-4478, ¶ 7, citing *State v. MacDonald,* 48 Ohio St.2d 66 (1976), paragraph one of the syllabus. It does not apply when a defendant is being held in custody pursuant to other charges. *Id.*

{¶ 132} The Supreme Court of Ohio has held "that a charge is not pending for purposes of calculating speedy-trial time pursuant to R.C. 2945.71(C) until the accused has been formally charged by a criminal complaint or indictment, is held pending the filing of charges, or is released on bail or recognizance." *State v. Azbell*, 2006-Ohio-6552, ¶ 21. If the defendant is not brought to trial within the statutory period, the charges must be dismissed with prejudice "unless the person is brought to trial on those charges within fourteen days after the motion is filed and served on the prosecuting attorney" or unless "the person is brought to trial on those charges within fourteen days after it is determined by the court that the time for trial required by sections 2945.71 and 2945.72 of the Revised Code has expired." R.C. 2945.73(C)(2).

{¶ 133} R.C. 2945.72 sets forth events that may toll the statutory time periods set forth in R.C. 2945.71. These events include "[a]ny period of delay necessitated by the accused's lack of counsel"; any period of delay "occasioned by the neglect or improper act of the accused"; any period of delay "necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused"; and "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion[.]" R.C. 2945.72(C), (D), (E), and (H).

{¶ 134} Sua sponte continuances by the trial court may also toll speedy-trial time, so long as the order is properly journalized and sets forth the trial court's reasons for the continuance. *State v. Jenkins*, 2011-Ohio-837, ¶ 20, 21 (8th Dist.).

The record must ""affirmatively demonstrate that a sua sponte continuance was reasonable in light of its necessity and purpose."" *Id.* at ¶ 21*,* quoting *State v. Pirkel*, 2010-Ohio-1858, ¶ 16 (8th Dist.), quoting *State v. Lee*, 48 Ohio St.2d 209 (1976).

{¶ 135} When reviewing a speedy-trial issue, we "must count the number of delays chargeable to each side and then determine whether the number of days not tolled exceeded the time limits under R.C. 2945.71." *State v. Jones,* 2021-Ohio-3359, ¶ 13 (8th Dist.), citing *State v. Ferrell,* 2010-Ohio-2882, ¶ 20 (8th Dist.). In doing so, the statutes are to be strictly construed against the State. *Id.,* citing *Brecksville v. Cook,* 75 Ohio St.3d 53, 57 (1995).

### ii. Statutory Speedy-Trial Analysis

{¶ 136} Fluker was arrested on May 4, 2024 in Case No. CR-24-692251. He was arraigned on June 20, 2024. On June 24, 2024, Fluker filed a demand for discovery, tolling the speedy-trial time until the State responded on June 28, 2024. *State v. Geraci,* 2015-Ohio-2699, ¶ 22 (8th Dist.) (recognizing that "[a] defendant's demand for discovery tolls the speedy trial time until the state responds to the discovery or for a reasonable time, whichever is sooner"). As of June 28, 2024, 51 days of speedy-trial time had elapsed.

{¶ 137} On June 28, 2024, the State served its own demand for discovery that Fluker did not respond to. Generally, "[t]he tolling of statutory speedy trial time based on a defendant's failure to respond to the state's reciprocal discovery requests within a reasonable time is not dependent upon the filing of a motion to compel by the state." *Id.* at ¶ 23, citing *State v. Palmer,* 2007-Ohio-374, paragraph two of the

syllabus. This court, under most circumstances, has considered 30 days to be a reasonable time for a defendant to respond. *See Geraci* at ¶ 25. As such, Fluker's time tolled until July 28, 2024.

{¶ 138} A pretrial was held on July 8, 2024, and was continued at Fluker's request for the purpose of completing discovery. A continuance granted at the defendant's request tolls the speedy-trial period. *State v. Johnson,* 2019-Ohio-3178, ¶ 11 (8th Dist.), citing *State v. Brelo,* 2001-Ohio-4245 (8th Dist.). We have also recognized that "[s]cheduling and docketing conflicts are reasonable grounds for extending an accused's trial date beyond the speedy trial limit date." *Id.,* citing *State v. Gibson,* 2014-Ohio-3421.

{¶ 139} Multiple pretrials were held and continued at Fluker's request. The reasons included discovery purposes and new counsel being assigned. Fluker does not challenge any of these tolling events. Rather, he alleges that on February 3, 2025, the court's rescheduling of the previous trial date to May 12, 2025, was unreasonable. However, the reason for the continuance was that Fluker had obtained new counsel. We have held a continuance that is necessary for new defense counsel to prepare for trial will toll speedy-trial time. *Id.,* citing *State v. Christian,* 2014-Ohio-2590, ¶ 11 (7th Dist.). When discussing speedy-trial issues with Fluker at the following pretrial on March 4, 2025, the court advised Fluker:

> Okay. I'm going to address a few things that were said here. You referenced speedy trial. We can go through and do a calculation for you, but, Mr. Fluker, when you threatened [your previous attorney] and his family through a third party, that forced this court to appoint another attorney which means that all the time gets tolled. The same

and/or similar circumstance happened with the first lawyer. All of these are tolling events.

{¶ 140} As a result, we do not find the trial court's February 3, 2025 continuance to be unreasonable in light of the fact that new counsel had been appointed as a direct result of Fluker's own actions. As such, this time reasonably tolled.

{¶ 141} We do not need to address whether the triple-count provision set forth in R.C. 2945.71(E) is applicable in this case, because the record reflects that only 51 days of speedy-trial time had expired by the time Fluker was brought to trial. As such, even if we were to assume that the triple-count provision applied to this case and that Fluker was incarcerated the entire time (he was not), only 51 of the 90 triple-count speedy-trial days had expired.

### iii. Constitutional Speedy-Trial Analysis

{¶ 142} In determining whether a defendant has suffered a constitutional speedy-trial violation, "we balance four factors: 'the length of the delay, the reason for the delay, the accused's assertion of his or her right to a speedy trial, and the prejudice to the accused as a result of the delay.'" *Jones,* 2021-Ohio-3359, ¶ 23 (8th Dist.), quoting *Barker v. Wingo,* 407 U.S. 514, 530 (1972). The first factor, the length of the delay, has been described as the "triggering mechanism," determining whether it is necessary to inquire into the remaining three factors. That is, the defendant must demonstrate a showing that the delay was presumptively prejudicial. *Id.* "Post-accusation delay approaching one year is generally found to

be presumptively prejudicial." *Id.,* citing *Doggett v. United States,* 505 U.S. 647, 652, fn. 1 (1991).

{¶ 143} With respect to the first factor, the length of delay, there was more than a one-year delay from when Fluker was initially arrested to when he was brought to trial. As such, we must address the remaining three factors.

{¶ 144} Regarding the second factor, the reason for the delay, Fluker sought numerous continuances for several reasons, including the fact he obtained multiple attorneys while these charges were pending. As discussed above, the trial court was required to appoint new counsel to Fluker because of Fluker's attempts to threaten his attorney and his attorney's family through a third party. As such, these days are attributable to Fluker.

{¶ 145} With respect to the third factor, whether he asserted his speedy-trial rights, Fluker did file a pro se motion to dismiss based on speedy-trial grounds while he was represented by counsel. The trial court addressed this motion with Fluker and advised him that the time tolled because of him threatening his attorneys, requiring the court to appoint new counsel on two occasions.

{¶ 146} And finally, with respect to the fourth factor, prejudice, the Supreme Court of the United States has explained that the prejudice factor "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker,*

407 U.S. at 532. "The third interest warrants special emphasis because prejudice in that context 'skews the fairness of the entire system.'" *State v. Long,* 2020-Ohio-5363, ¶ 22, quoting *Barker* at 532.

{¶ 147} Here, Fluker argues that he was prejudiced because "he was repeatedly denied bail, remained in jail for an extended period of time and same hindered his ability to mount a defense with additional resources available to him outside of jail." However, Fluker does not direct us to what "additional resources" would have been available to him had the trial been sooner. Instead, his assertion that he was hindered in preparing his defense is hypothetical that relies on mere speculation that is insufficient to demonstrate prejudice. *See Jones,* 2020-Ohio-3359, at ¶ 27 (8th Dist.) (stating that the defendant's "asserted difficulty in preparing a defense is hypothetical and relies on nothing more than mere speculation that is not sufficient to show prejudice"). As such, Fluker has failed to demonstrate he suffered prejudice as a result.

{¶ 148} After reviewing the *Barker* factors and applying them to this case, we find that Fluker's constitutional speedy-trial rights were not violated. Since neither Fluker's statutory nor constitutional speedy-trial rights were violated, we cannot say that his trial counsel was ineffective in failing to raise a speedy-trial claim.

### c. Miscellaneous Claims

{¶ 149} Fluker raises three additional allegations concerning the effectiveness of his trial counsel. First, he argues the failure to object to the joinder of these three cases rendered trial counsel's representation ineffective. Having

already determined in his third assignment of error that the trial court did not commit any error in joining these cases for the purposes of trial, we necessarily find that his trial counsel was not ineffective for failing to object to the joinder. *See West,* 2013-Ohio-96, at ¶ 26 (8th Dist.) (holding that since court had already determined in a previous assignment of error that even though the defendant's right to confrontation may have been violated, the error was harmless, necessarily finding that the defendant was not denied his right to effective assistance of counsel for failing to object to the improper testimony).

{¶ 150} Second, while testifying, Myers, the Amazon employee, referenced a prior altercation Amazon security had with Fluker in 2021. Defense counsel immediately objected. The trial court struck Myers's statement from the record and instructed the jury to "completely disregard any and all information you may have heard regarding the incident. It has nothing — no bearing on your decision as juror for this case. Thank you." Fluker alleges that trial counsel was ineffective for failing to object prior to Myers's statement.

{¶ 151} The record reflects that as soon as Myers mentioned the 2021 altercation, trial counsel immediately objected. Further, the trial court struck Myers's reference to the 2021 incident and instructed the jury to disregard it. As we have previously discussed, a "jury is presumed to follow the trial court's instructions." *McCay,* 2007-Ohio-4051, at ¶ 30 (8th Dist.), citing *Pang v. Minch,* 53 Ohio St.3d 186 (1990). This includes any curative instructions intended to remedy any errors or irregularities that occur during trial. *West,* 2003-Ohio-7067,

at ¶ 38 (8th Dist.), citing *Zuern,* 32 Ohio St.3d at 61. Thus, we find that trial counsel immediately objected, the error was cured, and Fluker suffered no prejudice as a result.

{¶ 152} Third, Fluker alleges that the prosecutor engaged in prosecutorial misconduct during its closing argument by commenting on Fluker's demeanor during trial, stating that Fluker "smiled when that 911 call was being played. Grinning at her vulnerability on that witness stand listening to herself on that call." Fluker claims that his trial counsel was ineffective for failing to object.

{¶ 153} We have held that a prosecutor is free to comment on a defendant's demeanor during trial. *State v. Ladson,* 2018-Ohio-1299, ¶ 38 (8th Dist.); *accord State v. Green,* 90 Ohio St.3d 352, 373 (2000) (holding that "the prosecutor did not err by commenting on [the defendant's] demeanor, body language, and lack of any concern during trial"); *State v. Hill,* 75 Ohio St.3d 195, 203 (1996) (holding that "[c]ounsel could legitimately point out that Hill did not react when scenes of his dead child were shown. An accused's face and body are physical evidence, and a prosecutor can comment on them").

{¶ 154} Trial counsel is not expected to perform a futile act while representing a client. As such, "the failure to do a futile act cannot be the basis for claims of ineffective assistance of counsel, nor could such a failure to prejudicial." *State v. Kilbane,* 2014-Ohio-1228, ¶ 37 (8th Dist.). The prosecutor's comments regarding Fluker's reaction to evidence presented at trial were proper; therefore, Fluker's counsel was not ineffective for failing to object.

{¶ 155} We find that Fluker's right to effective assistance of counsel was not violated. Accordingly, Fluker's sixth and final assignment of error is overruled.

## III. Conclusion

{¶ 156} Following a thorough review of the record and applicable law, we overrule Fluker's six assigned errors for review.

{¶ 157} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, ADMINISTRATIVE JUDGE

MARY J. BOYLE, J., and
KATHLEEN ANN KEOUGH, J., CONCUR